ULLA PALACIO, Plaintiff-Appellee, *v.* EDWARDO PALACIO, Defendant-Appellant.

(No. 60430;

First District (2nd Division)—November 4, 1975.

Richard B. Caifano and David E. Feldman, both of Chicago, for appellant.

Roger H. Williams and Neal Mermall, both of Skokie, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

This action was heard upon plaintiff's amended complaint asserting physical cruelty as grounds for divorce. Following a bench trial, judgment for divorce was entered in favor of plaintiff, and she was awarded alimony in gross. During post-trial proceedings, the trial court found defendant guilty of willful contempt and perjury, and as a result, sentenced him to serve two terms totalling 90 days, to run consecutively, in the Cook County jail. Defendant appeals from the award of alimony in gross and the contempt citations. The sufficiency of the evidence supporting that portion of the judgment granting the divorce is not questioned.

The following was awarded to plaintiff as alimony in gross: (1) the sum of $2000 to be paid in weekly installments of $20; (2) a savings account, which had previously been held by the parties in joint tenancy, with approximately $900 on deposit; (3) possession of the household furniture, furnishings, and other personalty contained in the parties' marital residence, except for three paintings, certain chairs, and a bedroom set, which were granted to defendant; (4) a certain 1970 Ford LTD; and (5) certain shares of common stock of Wickes, Inc., which

had previously been held by the parties in joint tenancy. Defendant was allowed all property he brought to the marriage, his personal possessions, and his post-separation purchases.

The record reveals that the parties were married in 1966. It was stipulated that the gross income earned by plaintiff and defendant in 1972 was $14,386.89 and $10,176.16 respectively. They also stipulated to wage statements received by each of them during the month prior to trial; for a one-week period, plaintiff earned $128.68 gross and received $96.04 after deductions, and defendant produced wage statements totalling $900 gross and $657.12 net for one month.

In support of her prayer for alimony, Mrs. Palacio testified that she had been employed throughout the marriage. Although she had earned $1000-$1200 per month during the spring of 1972, her income decreased to $800-$900 per month at the beginning of 1973, and she was earning about $520 monthly at the time of trial. She stated that she had contributed most of the articles of furniture which had been brought to the marriage by the parties. After their marriage, she purchased additional articles of furniture from her employers at a discount, using funds from the parties' joint bank account. Plaintiff further testified that in 1972, she began buying stock in Wickes, Inc., her employer at that time. Following threats from defendant, she allowed defendant to become a co-owner of the stock in joint tenancy. The parties also held a joint bank account with the Harris Trust and Savings Bank, to which, according to plaintiff's testimony, she contributed a majority of the funds on deposit. Subsequent to their separation in 1972, plaintiff continued to remit payments, totalling approximately $580 toward various marital obligations incurred by the parties. In addition to these disbursements, plaintiff testified that defendant owed her $35.20 for a partial rent payment and $244 for the proceeds of a paycheck drawn to plaintiff, but which was endorsed and cashed by defendant. Defendant stipulated that he had signed the check. Although plaintiff was residing with relatives at the time of trial and therefore did not incur a rental expense, she estimated that her monthly living expenses, if she lived alone, would be about $590.

Mr. Palacio testified that he was paying $128 per month toward the purchase price of a new car and that he incurred additional monthly expenses for credit card charges. He admitted that all household furniture, with the exception of two chairs, was either contributed by plaintiff or purchased during the marriage with checks drawn on their joint account. Defendant further testified that subsequent to their separation, he purchased three paintings and engaged in one transaction on the commodities exchange.

Upon this evidence, alimony in gross was awarded to plaintiff. De-

fendant raises two issues with respect to this award: whether an award of alimony in gross is proper when special equities are neither alleged nor proven, and whether this award ordered by the trial court is supported by the evidence.

■■■ Section 17 of the Divorce Act (Ill. Rev. Stat. 1971, ch. 40, par. 18) provides as follows:

> "Whenever a divorce is granted, if it shall appear to the court that either party holds the title to property equitably belonging to the other, the court may compel conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable."

Before property can be ordered conveyed pursuant to this section, special equities justifying such an award must be specifically alleged in the complaint and established by competent evidence adduced at trial. (*Lawyer v. Lawyer*, 19 Ill.App.3d 571, 321 N.E.2d 7; *Overton v. Overton*, 6 Ill.App.3d 1086, 287 N.E.2d 47.) In addition to section 17, section 18 of the Act (Ill. Rev. Stat. 1971, ch. 40, par. 19), which provides in pertinent part as follows, authorizes an award for support and maintenance in conjunction with a divorce decree:

> "The court may order the husband or wife, as the case may be, to pay to the other party such sum of money, or convey to the party such real or personal property, payable or to be conveyed either in gross or by installments as settlement in lieu of alimony, as the court deems equitable."

When either alimony or a settlement in lieu of alimony is awarded under section 18, special equities need not be pleaded nor proven. (*Miezio v. Miezio*, 6 Ill.2d 469, 129 N.E.2d 20, citing *Persico v. Persico*, 409 Ill. 608, 100 N.E.2d 904.) All that is required to sustain an award ordered pursuant to this section is that the recipient spouse is entitled to alimony and that the conveyance is equitable. (*Cross v. Cross*, 5 Ill.2d 456, 125 N.E.2d 488; *Persico v. Persico*.) Whether the recipient spouse is entitled to alimony depends upon that spouse's needs and the other spouse's ability to pay alimony. (*Klebba v. Klebba*, 108 Ill.App.2d 32, 246 N.E.2d 681.) Thus, the power of the trial court to divide and settle the property rights of parties under section 17 is distinct from its power to direct a settlement in lieu of alimony under section 18. *Savich v. Savich*, 12 Ill.2d 454, 147 N.E.2d 85.

■■ The phrase "alimony in gross" refers to one type of award which may be granted pursuant to section 18. More specifically, this phrase describes an arrangement for support and maintenance in which the entire award is vested, not subject to modification, and definite in amount, regardless if the award consists of the payment of money or the transfer

of specific real or personal property, or both. (*Imbrie v. Imbrie*, 94 Ill. App.2d 60, 236 N.E.2d 381; *Walters v. Walters*, 341 Ill.App. 561, 94 N.E.2d 726, *aff'd*, 409 Ill. 298, 99 N.E.2d 342.) Unlike periodic alimony, when installment payments are provided for in an order for alimony in gross, such payments are always for a definite length of time. (*Walters v. Walters.*) When alimony in gross is ordered, the amount and terms of such an award are largely within the discretion of the trial court, subject to correction only upon a finding that this discretion was improperly exercised. *Donini v. Donini*, 331 Ill.App. 405, 73 N.E.2d 127.

In the instant case, an award of alimony in gross was granted in lieu of alimony; the court not only referred to the award as "alimony in gross," but also provided that all rights of the parties by way of alimony were forever barred. Since such an award is authorized by section 18, we need not determine whether plaintiff alleged and established the existence of special equities in her favor. Thus, defendant's argument in this regard is without merit.

■■ We find that the record supports the conclusion implicitly reached by the trial court that plaintiff is entitled to alimony; Mrs. Palacio's income decreased significantly during the year preceding trial, and moreover, her income at the time of trial was insufficient to defray the estimated expenses she would incur if she lived alone. In addition, there is no evidence to suggest that defendant is incapable of paying alimony; in fact, Mr. Palacio has made investments and purchased paintings since the separation.

■■ We also find that the award was equitable. Contrary to the cases relied upon by defendant which pertain to periodic alimony, a comparison of the annual incomes received by the parties is not controlling of the amount which should be awarded in gross since the obligation of the paying spouse for support and maintenance terminates when the award has been paid or conveyed in full. (*Still v. Still*, 96 Ill.App.2d 320, 238 N.E.2d 613; *Katauskas v. Katauskas*, 67 Ill.App.2d 33, 213 N.E.2d 420.) After considering the financial status of both parties at the time of trial, the uncontroverted testimony of plaintiff that defendant owed her approximately $280, the fact that plaintiff continued to remit payments subsequent to their separation on many of their outstanding marital obligations, the fact that several of the items included in the award were either contributed to the marriage by plaintiff or purchased with funds which were deposited in large part by her, and the amount of the award, we cannot say that the trial court improperly exercised its discretion when granting this award to plaintiff.

Before addressing defendant's argument pertaining to the contempt citations, a statement of the circumstances which resulted in these cita-

tions is necessary. Judgment for divorce was entered on April 3, 1974. On May 8, plaintiff was permitted to file, among other documents, a petition for Rule to Show Cause against defendant. Allowing defendant time to file responsive pleadings, the matter was set down for hearing on May 15, 1974. Defendant was directed to personally appear at that hearing and also to produce on that occasion the parties' passbook for their bank account. On May 15, defendant appeared personally, but did not produce the passbook. As a result, the trial court found defendant in willful contempt of court for his failure to comply with those paragraphs of the judgment for divorce awarding plaintiff the household furniture and the bank account. However, the court's order, entered on May 16, allowed defendant ten days within which to purge himself of the contempt citation; defendant's failure to so comply with this order would result in his commitment to the Cook County jail for 60 days. Post-trial proceedings were held on May 20 to consider defendant's motions to stay enforcement of both the judgment for divorce and the contempt order entered on May 16 and plaintiff's petition for commitment of defendant. Although defendant did not personally appear at this proceeding, he was represented by counsel. At that time, plaintiff testified that she had conversations with defendant on May 15, 16 and 18. She stated that during each conversation, defendant refused to allow her to remove any furniture from their marital residence which he was occupying at that time. She testified that on May 16, defendant told her that "he has filed an appeal, and it's cheaper for him to file an appeal than to give me what I want. He has nothing personal against me, but he is not going to do it." Plaintiff also testified that when she went to the residence on May 15, the lock on the door had been changed. Throughout plaintiff's testimony, defendant's attorney remained silent, and he did not cross-examine her. After plaintiff's attorney reminded the court that defendant had previously testified that the locks had not been changed, the trial judge stated the following:

"The Court finds him guilty of willful contempt and perjury committed in open court and sentences him to 60 days for his failure to comply with the terms of the decree and 30 days for the perjury, in addition thereto, to be served, not together but one after the other."

Defendant argues that the summary nature of this contempt proceeding deprived him of his constitutional right to due process of law.

■■■ In *People v. Javaras*, 51 Ill.2d 296, 281 N.E.2d 670, our Supreme Court defined "criminal contempt" of court as "conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the

administration of law into disrepute." (51 Ill.2d 296, 299, 281 N.E.2d 670, 671.) (Citations omitted.) The court then elucidated the distinction between "direct" and "indirect" criminal contempt as follows:

"The procedural requirements for judicial punishment for criminal contempt of court depend upon whether the contempt is 'direct or 'indirect.' Previous decisions of this court have recognized two types of direct criminal contempts—those which are personally observed by the judge and those which are not personally seen by the judge but take place in an integral or constituent part of the court and are thereby deemed to have occurred in the constructive 'presence of the court.' * * * As a general rule, a direct criminal contempt (involving punishment of less than six months imprisonment) which is personally seen by the judge may be summarily punished without the necessity of a hearing or other procedural formalities. A direct criminal contempt which occurs in the constructive 'presence of the court' may call for the hearing of extrinsic evidence, * * * although, again, the proceeding may be essentially summary in nature. If, however, such evidence is necessary to establish the contempt, notice and hearing are required. * * *

Indirect criminal contempts are those in which the whole or an essential part of the contemptuous acts occur out of the presence of the court; i.e., they are not personally observed by the judge or do not occur in an integral or constituent part of the court. In a proceeding to punish for indirect contempt, the alleged contemner must be informed of the charges against him by information, notice, citation, or rule to show cause, and he must be given an opportunity to file an answer thereto and receive a full hearing thereon * * * together with a jury trial, when demanded, in cases involving serious contempts." (Citations omitted.) (51 Ill.2d 296, 299-300, 281 N.E.2d 671, 672.)

Thus, the threshold inquiry for determining whether an alleged contempt of court was of either a direct or indirect nature is whether the questioned conduct was committed "in the presence of the court." Consequently, both the physical location and the nature of the act must be considered. Since direct contempt is predicated upon specific misconduct, an order imposing punishment for such activity must fully and clearly set forth the underlying facts out of which the contempt citation arose to enable a reviewing court to effectively evaluate the action taken by the lower court. *People v. Miller,* 51 Ill.2d 76, 281 N.E.2d 292; *People v. Koniecki,* 28 Ill.App.2d 483, 171 N.E.2d 666.

In order to properly consider defendant's argument, we will first

review the trial court's finding of willful contempt for defendant's failure to comply with the provisions contained in the judgment for divorce. Then, we will determine whether the trial court correctly imposed the 30-day sentence for the allegedly perjurious statements attributed to defendant.

■■■ By its order entered on May 8, the trial court directed defendant to both personally appear and produce the bank passbook at the hearing held on May 15. Although defendant personally appeared at that hearing, he failed to produce the passbook. This conduct, which was observed by the trial judge, constituted grounds for a finding of direct criminal contempt. Whenever it is established that a party has failed to comply with a divorce decree, this fact constitutes prima facie evidence of contempt. (See *Shaffner v. Shaffner*, 212 Ill. 492, 72 N.E. 447; *Boyden v. Boyden*, 162 Ill.App. 77.) The burden then shifts to the alleged contemner to show that the conduct objected to was not willfully committed. (*Boyden v. Boyden*.) Whether that party should be found in contempt of court thus becomes a question of fact to be determined by the court after hearing the evidence. (*Gregory v. Gregory*, 52 Ill. App.2d 262, 202 N.E.2d 139.) The order entered on May 16 is sufficiently specific for us to review the lower court's action, and we hold that defendant was properly found in willful contempt of court at the May 15 proceeding. Furthermore, on May 20, notwithstanding the fact that defendant was allowed ten days within which to purge himself of this contempt citation, the trial court properly ordered the issuance of an attachment for contempt and contempt mittimus directing that defendant be taken into custody to begin serving the 60-day sentence. Defendant had notice that a proceeding would be held on May 20, but neither personally nor through his attorney did he choose to present evidence in response to plaintiff's testimony supporting her petition for commitment. As a result, the trial court's action was justified in light of plaintiff's uncontroverted testimony.

■■ Defendant was sentenced to serve an additional 30 days in the county jail following plaintiff's testimony on May 20. She alleged that defendant had changed the lock on his apartment door. Even though this accusation, if true, contradicted defendant's testimony at a prior hearing, his conduct, if deemed to be contemptuous, could only constitute indirect criminal contempt since it did not occur within the presence of the court. Not only does our review of the record fail to disclose evidence tending to support this allegation, but moreover, the procedural due process requirements set forth in *Javaras* which are necessary for a proceeding to punish for indirect contempt were not satisfied in this matter; defendant was not notified of the charges against him, allotted

time within which to file an answer, nor given a full hearing. Because of these procedural defects, that portion of the order entered on May 20 sentencing defendant to 30 days in the county jail for perjury is reversed. See also *People v. Koniecki.*

Accordingly, the judgment for divorce is affirmed, and the order entered on May 20, 1974 is affirmed in part and reversed in part.

Judgment affirmed; order affirmed in part and reversed in part.

DOWNING, P. J., and LEIGHTON, J., concur.