MARGUERITE LOUISE LEWANSKI, Plaintiff-Appellee, *v.* ROBERT J. LEWANSKI, Defendant-Appellant.

First District (5th Division)   No. 76-1345

Opinion filed April 21, 1978.

Frank Pellegrini and Leonard T. Timpone, both of Jacobs, Camodeca & Timpone, of Chicago, for appellant.

Arthur F. Schwartz, of Chicago, for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant appeals from a judgment granting a divorce to plaintiff, contending that the trial court abused its discretion when it continued in effect a temporary support order which was excessive in light of his earnings. He also contends that the trial court erred when it (a) awarded certain items of property to plaintiff in addition to periodic alimony, (b) awarded fees to plaintiff's attorney which were excessive in light of defendant's ability to pay, and (c) entered orders after defendant had filed his notice of appeal.

The following facts are pertinent to the disposition of this appeal.

On September 17, 1975, plaintiff filed a complaint which prayed, *inter alia*, that the bonds of matrimony existing between her and defendant be forever dissolved; that she be awarded the sole custody of the parties' three minor children; that defendant be required to pay to her reasonable

sums for alimony, child support and attorney's fees; that defendant be enjoined from harassing plaintiff and from selling or otherwise disposing of the parties' coin collection; and that the court award to plaintiff a 1973 Pontiac automobile and all of the furniture in the marital apartment. Defendant's answer prayed that action be dismissed. On September 26, 1975, the court entered an order pursuant to an agreement between the parties which required that defendant pay to plaintiff 50 per cent of his earnings with a minimum of $150 per week for the temporary support and maintenance of plaintiff and the minor children; that defendant have reasonable visitation rights with the minor children; and that he pay to the law firm of Blumenthal and Schwartz $350 in temporary attorney's fees. The court subsequently allowed an additional $250 in plaintiff's attorney's fees, and denied each of several petitions filed by defendant asking that the support payments ordered by the court be reduced. The cause was assigned to trial on July 1, 1976, at which time the following evidence pertinent to this appeal was adduced.

Plaintiff, on her own behalf, testified that three children ranging in age from one to five years had been born of her marriage to defendant. Prior to their marriage she had earned approximately $10,000, $7,000 of which was used to buy the furniture for their apartment, while the other $3,000 was contributed to the purchase of dishes, linens and other family items. She currently is without funds or assets. She could not work because she has to stay at home and care for her minor children. She and her children moved from the apartment in Chicago to one in Palos Hills. Total living expenses for her and her children are approximately $812 a month. Since May 1973 she had been the sole driver of the 1973 Pontiac Le Mans automobile. She was paying for the insurance and maintenance of this car and needed it for the transportation of herself and her children. The car had recently been towed away from her apartment. Defendant had not made all of the payments required by the support order which provided her with a minimum of $150 per week, and he was currently $350 in arrears under the order. During their marriage, she and defendant acquired a coin collection which she estimated to be worth approximately $2,500. She acknowledged that the rent for her apartment in Palos Hills was higher than the average rent in the neighborhood she and defendant had lived in, and that the public transportation was not as good, but explained that her new neighborhood was a better place for her children. She also acknowledged that defendant was the sole supporter of the family during their marriage, and that he supplied all of the funds used to purchase the coin collection.

Defendant, called under section 60, acknowledged that in September 1975, he agreed to temporarily pay plaintiff $150 per week, but stated that he told her soon afterward that he could only pay $100 per week. He had

delivered the Pontiac Le Mans to his wife under court order. He had been making payments on the car since its purchase in 1973, and still owed approximately $1,850 on it, but at the end of 1975 he had terminated the arrangement he had with his credit union whereby payments on the car were deducted from his weekly paycheck. He denied knowing that the car was going to be repossessed.

On direct examination on his own behalf, defendant testified that in both 1974 and 1975 he earned approximately $19,000, but in 1976 as of June 19 he had earned approximately $6,200 with net weekly earnings of $187. He estimated that he would earn approximately $15,000 in 1976 and explained that the decrease was due to a generally poorer economy. His monthly living expenses are approximately $320, which does not include a $20 a month expenditure for life insurance. He valued the coin collection to be worth no more than $100.

On cross-examination he denied telling his wife that he would make sure that he didn't work so that he would not have the money to pay for her support, or that the coin collection was worth $2,500.

Plaintiff, on rebuttal, testified that her husband told her that the coin collection was worth approximately $2,500.

On July 7, 1976, notice of a hearing on plaintiff's petition for fees, which was to be held on the following morning, was telephoned by the clerk of the court to the attorneys for both parties, but was not received by defendant's counsel. Attempts to locate defendant's counsel on the morning of July 8, 1976, also failed, and the hearing was held ex parte. Arthur F. Schwartz, attorney for plaintiff, testified that the time sheets he kept correctly revealed that he had spent 103 hours working on this case, and that a fair and reasonable fee for the work performed, in addition to the retainer he had received from plaintiff and the amount previously awarded by the court, would be $6,000.

On August 16, 1976, a judgment of divorce was entered which, *inter alia*, found that defendant had been guilty of extreme and repeated physical cruelty to plaintiff during their marriage, and ordered that the marriage be dissolved. The judgment awarded sole custody of the three minor children to plaintiff, and ordered defendant to pay to plaintiff $30 per week for alimony and $120 per week for child support. It also awarded the parties' furniture and the 1973 Pontiac Le Mans automobile to plaintiff, with directions that defendant return the car to her and be solely responsible for the outstanding payments due on it. The judgment further directed that the coin collection be equally divided between the parties, and that defendant pay to Blumenthal and Schwartz an additional $6,000 as plaintiff's attorney's fees. Defendant filed a notice of appeal from this judgment on August 24, 1976. On September 29, 1976, the court entered an order requiring defendant to pay certain percentages of his

income to plaintiff for her and the children's support during the appeal, and to the law firm of Blumenthal and Schwartz for attorney's fees of $1,000 in connection with the appeal.

OPINION

■■ Defendant first contends that the $150 a week awarded by the court as alimony and child support is excessive. Defendant admits that at the commencement of the divorce proceedings he offered to pay plaintiff $150 a week, and that an agreed order for temporary support citing that amount as the minimum support was therefore issued. He contends, however, that the continuation of $150 as a permanent figure is excessive in light of his earnings. The amount of alimony and child support which should be allowed in a divorce case must be determined by accommodating, insofar as possible, the needs of the parties and the children with the available means of the parties, due regard being given to their stations in life. (*Everett v. Everett* (1962), 25 Ill. 2d 342, 185 N.E.2d 201.) Defendant testified at trial that he earned approximately $19,000 in 1974 and in 1975 and estimated that he would earn only $15,000 in 1976. Defendant refers in his brief, however, to a post-trial petition he filed on February 3, 1977, which revealed that his 1976 gross income was $16,800 and that his net income was $229 a week. He also testified at trial that his payments for rent, utilities, food, laundry and dry-cleaning totaled approximately $320 a month. While payment of these expenses under defendant's reduced 1976 net earnings would apparently consume the entire portion of the income remaining to him after his payments under the court's order, plaintiff's testimony at trial indicated she currently had no incoming funds of her own, and that the total living expenses for her and the three minor children would substantially exceed the $150 a week ordered by the court. We also note that there was some dispute before the trial court as to whether the reduction in defendant's earnings was the result of a generally poorer economy, or was due to defendant's hostility and reluctance to pay the amounts of alimony and child support which had been ordered. The determination of those amounts lies within the sound discretion of the trial court which heard and considered the evidence, and its decision will not be set aside unless it is contrary to the manifest weight of the evidence. (*Hoffmann v. Hoffmann* (1968), 40 Ill. 2d 344, 239 N.E.2d 792.) After reviewing the pertinent evidence adduced at trial, we cannot say that the trial court's award to plaintiff of $150 a week for alimony and child support was contrary to the manifest weight of the evidence or an abuse of the court's discretion.

■■ Defendant further argues, however, that plaintiff changed her station in life when she moved from the marital apartment to a new apartment and neighborhood where the rent is substantially higher.

Plaintiff admitted at trial that the rent she now paid was higher than the average rent in her former neighborhood, but explained that the new neighborhood was a better place to raise her children. Defendant has cited no case wherein a move to a more expensive apartment, by itself, was held to be a substantial change in the party's station in life. In determining the propriety of an award for alimony and child support, no single factor is controlling, and each case depends on all of its individual facts. (*Scruggs v. Scruggs* (1974), 23 Ill. App. 3d 1004, 320 N.E.2d 406.) Plaintiff's move was reasonably designed to meet her needs and the needs of her children, and does not appear to have been calculated to raise her station in life to any significant degree. Further, the fact that the trial court, after hearing all of the evidence, continued the total award for plaintiff and her three minor children at $150 a week contributes to dispel defendant's suggestion that he is now being required to fund plaintiff in a substantially higher station in life.

■■ Defendant next contends that the trial court abused its discretion when, in addition to periodic alimony, it awarded to plaintiff all of the furniture in the marital apartment, one-half of the coin collection, and the 1973 Pontiac automobile. Defendant argues that this award violated section 18 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 19), which provides that real or personal property may be conveyed to a spouse in gross or by installments in lieu of alimony. Under that statute, a court may award either "alimony in gross" or periodic alimony, but both cannot be granted. (*Rich v. Rich* (1975), 24 Ill. App. 3d 1083, 322 N.E.2d 610.) Plaintiff argues, however, that special equities exist, and that the award of the property was therefore proper under section 17 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 18), which provides that:

> "Whenever a divorce is granted, if it shall appear to the court that either party holds the title to property equitably belonging to the other, the court may compel conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable."

In order to justify a conveyance of the property under the statute, special equities must be specifically alleged and proved. (*Palacio v. Palacio* (1975), 33 Ill. App. 3d 1074, 339 N.E.2d 427.) Defendant asserts that plaintiff failed to either plead or sufficiently prove any special equities. Although plaintiff's complaint did pray that for the reasons stated therein she be awarded the furniture and the automobile, and that the court determine the parties' rights to the coin collection, it did not specifically allege that she had special equitable rights in those properties. That fact, however, will not prevent our consideration of this issue. Defendant's answer to plaintiff's complaint put the disposition of the properties in question into issue, and proof was subsequently heard at trial as to the

nature of plaintiff's interest in the three properties without objection by defendant. Had defendant raised his complaint concerning the pleadings in the trial court either before or after judgment, an amendment could have been allowed under section 46(3) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 46(3)), so that the pleadings could conform to the proof. Defendant has instead raised his attack on the pleadings for the first time on appeal, and has thereby waived the issue from review. *Fowler v. Fowler* (1975), 26 Ill. App. 3d 313, 325 N.E.2d 98.

■■ In order to prove that she had the special equities in the properties in question that are required by section 17 of the Divorce Act, the burden was on plaintiff to show that she contributed valuable consideration, such as money or services other than those normally performed by a wife in the marriage relationship, which directly or indirectly was used to acquire or enhance the value of the properties. (*Everett v. Everett* (1962), 25 Ill. 2d 342, 185 N.E.2d 201; *Overton v. Overton* (1972), 6 Ill. App. 3d 1086, 287 N.E.2d 47.) There is, however, no legal formula for determining whether the wife's contributions will be deemed sufficient to warrant an equitable conveyance under section 17 of the Divorce Act, and each case must be adjudged on its particular facts. (*Gerhardt v. Gerhardt* (1974), 18 Ill. App. 3d 658, 310 N.E.2d 224.) Plaintiff's undisputed testimony at trial was that prior to her marriage she had accumulated $10,000 in personal funds. She used $7,000 of this money to buy all of the furniture in the marital apartment, and contributed the remaining $3,000 to the purchase of dishes, linens, and other family items. Contrary to defendant's argument that a special equity in the furniture was "not necessarily" established, the award of the furniture to plaintiff as sole purchaser was clearly proper. (See *Gottemoller v. Gottemoller* (1976), 37 Ill. App. 3d 689, 346 N.E.2d 393.) Regarding the award of one-half of the coin collection to plaintiff, defendant points out that by plaintiff's own admission, he was the sole supplier of all the funds used to purchase the coins. Equally important, however, is the fact that plaintiff contributed $3,000 of her own money toward the purchase of various necessary family items, "thereby freeing his [her husband's] income from those expenses so that it could be devoted to savings for the eventual purchase of the property." (*Cross v. Cross* (1955), 5 Ill. 2d 456, 466, 125 N.E.2d 488, 493.) Plaintiff therefore made an important albeit indirect contribution toward the acquisition of the coin collection. Further, although the value of the coin collection was disputed at trial, it was never suggested that its entire value exceeded the $3,000 which plaintiff had contributed. The court therefore did not abuse its discretion in awarding plaintiff one-half of the coin collection. See *Pohren v. Pohren* (1976), 40 Ill. App. 3d 1063, 353 N.E.2d 6.

■■ The court also awarded to plaintiff a 1973 Pontiac automobile. Where, as in this case, plaintiff has been granted periodic alimony, an additional conveyance of property can only be sustained under section 17 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 18), which requires that special equities be specifically alleged and proven. (*Palacio v. Palacio* (1975), 33 Ill. App. 3d 1074, 339 N.E.2d 427.) Although plaintiff stresses that she used the automobile from the time defendant purchased it in May 1973, she does not contend that she made any contribution toward the car's acquisition or payment, or that she made any other contribution which would give her a special equity in it. Rather, she states that she and her three minor children are greatly in need of the car, and, citing *Imbrie v. Imbrie* (1968), 94 Ill. App. 2d 60, 236 N.E.2d 381, argues that the award should be upheld as a partial award of alimony. In *Imbrie*, this court found that sufficient special equities to justify the conveyance of the marital homestead to the wife had been shown. Although it did not set forth what those special equities were, the court, in the portion of its opinion upon which plaintiff in this case apparently relies, did quote the trial court's finding that a hardship would be created if the homestead were not awarded to the wife to house her and her five minor children. (94 Ill. App. 2d 60, 64, 236 N.E.2d 381, 383.) Defendant correctly points out that other Illinois courts have questioned and specifically declined to follow the inference in *Imbrie* that potential hardship can confer special equities upon a party. (See *Davis v. Davis* (1976), 41 Ill. App. 3d 942, 354 N.E.2d 657; *Musgrave v. Musgrave* (1976), 38 Ill. App. 3d 532, 347 N.E.2d 831.) More importantly, however, the factual setting in *Imbrie* appears to be significantly different than the one in this case. In *Imbrie*, the property which the court ordered transferred was the marital home which the parties had owned in joint tenancy and which was subject to a real estate mortgage in excess of $10,000. Plaintiff in the instant case has not alleged any interest, equitable or otherwise, in the automobile, except that she used it in the past and feels now that she needs it. Because plaintiff has not established that she has any special equity in the automobile, we conclude that its award to her in addition to periodic alimony should be reversed as an abuse of the trial court's discretion.

Defendant next contends that the trial court abused its discretion in requiring him to pay excessive fees to plaintiff's attorney. He specifically states that his contention is not that her attorney did not earn the amount awarded, but rather that the award is excessive in light of his ability to pay.

It should be noted at the outset that a wife ordinarily is primarily responsible for her own attorney's fees and costs in a divorce action. (*Kolar v. Kolar* (1977), 47 Ill. App. 3d 37, 361 N.E.2d 751.) Plaintiff

correctly points out that the allowance of attorney's fees in a divorce case rests in the sound discretion of the trial court, and that discretion will not be interfered with unless it is clearly abused. (*Kolar; Rattray v. Rattray* (1976), 43 Ill. App. 3d 853, 357 N.E.2d 701.) It is well established, however, that the allowance of attorney's fees in a divorce proceeding is not automatic, but depends on a showing that one spouse is financially unable to pay the fees, while the other is able to do so. (*Karaskiewicz v. Karaskiewicz* (1976), 38 Ill. App. 3d 509, 348 N.E.2d 184; *Frank v. Frank* (1975), 34 Ill. App. 3d 957, 342 N.E.2d 404.) Accordingly, when a defendant specifically asks to be heard on the question of attorney's fees, the court should hear evidence of petitioner's needs, defendant's ability to pay, what work was done and the value of the services rendered. (*Moreau v. Moreau* (1973), 9 Ill. App. 3d 1008, 293 N.E.2d 680.) A review of the record reveals that such a hearing was not held in this case. At the conclusion of the trial, defendant's counsel requested a hearing on attorney's fees. Notice of the hearing, which was held on July 8, 1976, was only phoned to the attorneys' offices on the previous afternoon, and was not received by defendant's counsel. The only parties in attendance at the hearing, therefore, were plaintiff's attorney, Arthur F. Schwartz, and his associate, Richard Stavens. Schwartz testified to the time and effort he spent on the case and the amount which he thought to be a reasonable fee. No evidence was adduced and it was not shown that plaintiff was unable to pay the fees or that defendant was able to do so. At the conclusion of the hearing the amount requested by plaintiff's attorney was allowed in full by the trial court.

■■■ On appeal, in response to defendant's assertion that he is not financially able to pay the amount allowed as fees, plaintiff argues that she was "penniless" at the time of trial, and obviously was unable to pay her own attorney's fees. As we indicated above, absent proof of those two corresponding factors, the award of attorney's fees cannot stand. We, therefore, reverse the award of attorney's fees, and remand this question to the trial court for a proper hearing concerning the ability of plaintiff and defendant to pay all or part of the attorney's fees. We note at this time, however, that we have held an allowance of attorney's fees to be an abuse of the trial court's discretion not only when no showing had been made that defendant had the financial ability to pay them (*Lacey v. Lacey* (1974), 24 Ill. App. 3d 776, 321 N.E.2d 524), but also when the financial and other circumstances of both parties were found to be essentially the same so that the corresponding factors of the wife's inability and husband's ability to pay had not been shown. *Gold v. Gold* (1974), 17 Ill. App. 3d 11, 308 N.E.2d 75.

Defendant's final contention is that the court abused its discretion because on September 29, 1976, it entered an order after he had filed his

notice of appeal. Defendant correctly states that the court took its authority to enter the order from a portion of section 15 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 16) which provided as follows:

"In case of appeal by the husband or wife, the court in which the decree or order is rendered may grant and enforce the payment of such money for her or his defense and such equitable alimony during the pendency of the appeal as to such court shall seem reasonable and proper."

Defendant argues that the authority which this statute apparently granted to the court to enter its order was improper since it conflicted with the general appellate rule that the filing of a notice of appeal from a judgment, which defendant did here on August 24, 1976, deprives the trial court of jurisdiction to enter further orders. (See *Ragan v. Fourco Glass Co.* (1977), 47 Ill. App. 3d 1, 361 N.E.2d 707.) Defendant also points out as significant that the portion of section 15 of the Divorce Act quoted above was subsequently deleted by amendment (Pub. Act. 79-1360, effective October 1, 1976), and suggests that this amendment be given retroactive applicability so that the order of September 29, 1976, may be declared invalid.

■■ Regarding defendant's latter argument, we note that it would clearly be improper to retroactively apply the amendment to section 15 of the Divorce Act. The amendment itself did not provide for retroactive applicability, and the principle that a new law should not be construed to repeal any act done or right accrued under the former law must therefore apply. (See Ill. Rev. Stat. 1975, ch. 131, par. 4.) More importantly, however, we must conclude that the entire issue is not properly before us on appeal. Defendant not only failed to raise his current complaint at the time that the order of September 29, 1976, was entered, but also failed to file a notice of appeal from this or any of the subsequent enforcing orders. It is well established that an appellate court has jurisdiction only of those matters which are raised in the notice of appeal. In *People v. Harvey* (1972), 5 Ill. App. 3d 499, 502, 285 N.E.2d 179, 181, *cert. denied* (1973), 410 U.S. 983, 36 L. Ed. 2d 179, 93 S. Ct. 1504, this court explained that:

"Appeals to this court * * * are governed by Supreme Court Rules which provide that an appeal is perfected by the filing of a notice of appeal in the trial court and that such notice of appeal shall specify the judgment from which the appeal is taken. This is the only jurisdictional step in the appellate process. [Citations.] Similarly, the scope of review in this court is limited, *inter alia*, to the judgment appealed from. [Citations.]"

(See Supreme Court Rules 301, 303 and 366, Ill. Rev. Stat. 1975, ch. 110A, pars. 301, 303 and 366. See also *Wells v. Kern* (1975), 25 Ill. App. 3d 93, 322 N.E.2d 496.) Defendant's only notice of appeal in this case was filed on

August 24, 1976 and appealed from the judgment of divorce which had been entered by the court. The order of September 29, 1976, was therefore not properly preserved for our review. Similarly, although defendant also asserts that the court committed several instances of reversible error in entering its final judgment, these assertions were never raised or argued in the trial court, are made now without any legal support, and therefore will not be considered on appeal.

Based on the foregoing, the judgment of the circuit court is reversed in part, affirmed in part, and remanded for proceedings not inconsistent with this opinion.

Reversed in part; affirmed in part; remanded for further proceedings.

SULLIVAN, P. J., and WILSON, J., concur.