*In re* MARRIAGE OF JO ANNE INGRAM, Petitioner-Appellee, and DONALD R. INGRAM, Respondent-Appellant.

Fifth District   No. 5—87—0842

Opinion filed June 22, 1989.

Kathleen Moran, of Callahan & Moran, P.C., of Trenton, for appellant.

Ralph J. Mendelsohn, of Alton, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Jo Anne Ingram (petitioner) and Donald Ingram (respondent) were divorced on March 2, 1977, ending their marriage of nearly 25 years. Their marriage produced seven children, all of whom have now reached the age of majority, although the respondent continues to pay for the college expenses of the two youngest. At the time of their divorce the parties entered into a property settlement agreement which was incorporated into the divorce decree. The agreement provided, *inter alia*, that the respondent was to pay $200 per month towards the support of each minor child, was responsible for all costs of educating the children through college, and he was to pay $1,000 per month toward the mortgage on the family home, which was to be sold after the children reached majority, with the proceeds divided between the parties. The agreement also provided that the petitioner was to receive $1,500 per month for support and maintenance, but if she obtained employment: "Forty percent of the gross income earned by Wife over and above the first $3,000 shall be deducted from said alimony payments." In February of 1985 the parties, by agreement, modified the maintenance provision to add an additional $40 per week from November of 1984 until July of 1985.

In June of 1986, the respondent filed a petition for modification requesting that the maintenance payments be terminated because the petitioner had obtained employment which provided her with enough income to meet her needs and because the respondent had suffered a decrease in income and had incurred financial setbacks which substantially reduced the income available to pay support. In July of 1986, the petitioner filed a motion to increase maintenance and a petition for contempt claiming that the respondent owed her back maintenance payments. After a hearing held on February 25, 1987, the trial court ordered that the maintenance payments be reduced in accordance with the property settlement agreement. Although the court's order did not explicitly deny the respondent's motion to terminate maintenance or the petitioner's motion to increase it, the effect of the order reducing maintenance payments was to deny both motions. The court further found that the respondent was more than $8,000 in arrears and that his failure to pay constituted willful contempt. The court ordered the respondent to pay the amount in arrears within 30 days and also ordered him to pay the portion of attorney fees and costs associated with the contempt portion of the proceedings. The respondent's motion to reconsider was denied and he now appeals, contending that the trial court abused its discretion in failing to terminate the maintenance payments and that the court abused its

discretion in holding him in willful contempt of court for failure to pay the past-due maintenance.

The respondent is a practicing physician in the Alton area. He testified that his practice has been negatively affected by the increase in health maintenance organizations in Alton, as well as a general economic decline in the area. He also testified, however, that since the parties' marriage was dissolved in 1977, he has earned between $100,000 and $150,000 per year. In addition, although there was evidence that the respondent did not receive his salary at regular intervals because of cash flow problems, he agreed with the testimony of his accountant that he had earned approximately $120,000 in 1986, and he was projected to earn the same amount in 1987.

The respondent also testified about several financial setbacks he has suffered in recent years and their effects. He started a nursery business which failed, resulting in considerable financial loss, and for which he still owes $16,000. His attempt to buy a building from Alton Memorial Hospital resulted in the hospital taking the building back and he remains liable to the hospital for an amount somewhere between $40,000 and $96,000. Although the hospital filed suit, no judgment has been entered against the respondent for the debt, and its status remains unclear. In addition, the respondent and his accountant both testified that the respondent has incurred a tax liability of approximately $110,000 in connection with the building. This liability stemmed from the recapture of depreciation deductions which the respondent had taken on prior tax returns. The respondent's accountant stated that the benefits of the depreciation deductions were less than the tax now due on recapture because of other losses sustained by the respondent. These losses prevented the respondent from taking full advantage of the depreciation deduction. The accountant acknowledged, however, that the respondent paid very little personal income tax in the years 1981 through 1984.

The respondent also testified that at the time his marriage was dissolved in 1977 he was required to make payments of $1,000 per month on the marital home, but he was no longer required to make those payments. He and the petitioner each received $68,000 when the house was sold in 1986, and he used that money to pay debts. Respondent also acknowledged that he is no longer obligated to pay significant child support, and that in 1977 this obligation was $800 per month. In addition, while the respondent stated that he pays approximately $10,000 per year for educational expenses for each of the two children still in school, he believed he was no longer legally obligated to pay the expenses for one of the children under the terms of the

settlement agreement. The respondent further testified that he owned no significant real or personal property, had no savings or retirement program, and lives in a home for which he pays $800 per month, with an option to purchase for $60,000. In an attempt to increase his income, he stated he has extended his office hours to six days and two evenings per week and has opened a part-time office in Edwardsville, Illinois.

The petitioner testified that after the marriage was dissolved she attended school part time and earned a master's degree. She has been working full time for about a year as a counselor at a drug rehabilitation center and she also teaches part time at Lewis & Clark College. Her combined gross income from these two jobs is $18,900. Her monthly expenses are approximately $2,100. When the marital residence was sold in 1986, the petitioner used her share of the proceeds as a down payment on a house valued at $100,000. The outstanding mortgage on the home is approximately $49,000. In addition to her home, the petitioner testified that her remaining assets are two bank accounts totalling approximately $9,000 that represented an inheritance from her grandmother which she received before the marriage was dissolved. In addition, she has accumulated $13,700 in an individual retirement account which was funded with an annual gift from her mother. The petitioner also owns a 1985 Toyota on which she makes monthly payments of $187. Petitioner also testified that the respondent was in arrears on maintenance payments in 1986, had made no payments in 1987, and the total amount in arrears was $8,339.

The trial court found that the respondent was in arrears in the amount of $8,339 and that he had sufficient income in the months involved to make the payments. The court therefore found the respondent to be in contempt and ordered him to pay the arrearage within 30 days. The court also ordered the respondent to pay the attorney fees and costs associated with the contempt portion of the case, a sum of $675. The court further ordered that the $1,500 maintenance payments were to be reduced by 40% of the petitioner's gross income over $3,000, a reduction of over $500 per month. This reduction was in accordance with the formula set out in the settlement agreement.

■ We begin by noting that the power of a court to reduce the amount of periodic payments is not defeated by the fixing of the amount of the payments in a settlement agreement which was incorporated in the divorce decree. (*Lamp v. Lamp* (1980), 81 Ill. 2d 364, 410 N.E.2d 31.) A modification is warranted, however, only upon a showing of a substantial change in circumstances, and the party seeking modification bears the burden of proving this change. (*In re Mar-*

*riage of Logston* (1984), 103 Ill. 2d 266, 287, 469 N.E.2d 167, 176.) The decision to modify or terminate maintenance payments rests within the sound discretion of the trial court, and such a decision will not be disturbed absent an abuse of discretion. *Logston,* 103 Ill. 2d at 287, 469 N.E.2d at 176; *Geittmann v. Geittmann* (1984), 126 Ill. App. 3d 470, 472-73, 467 N.E.2d 297, 299.

■■ We find no abuse of discretion by the trial court in refusing to terminate the maintenance payments. While the record indicates that the respondent has suffered some significant financial misfortune, we do not believe he has presented sufficient evidence of a substantial change in circumstances to warrant a termination of maintenance payments. The evidence of the debt owed to the hospital was less than convincing. The amount of the debt was never clearly established, and although the hospital had filed a suit, no action had been taken for more than a year prior to the time of the hearing. The debt had not been reduced to judgment and the hospital was apparently not seeking immediate payment. The claimed loss of income was unsubstantiated. The tax liability, although large, is essentially little more than an accumulation of deferred tax liabilities from prior years. In addition, in view of the fact that the respondent is no longer required to pay child support, and has been relieved of the obligation to make mortgage payments of $1,000 per month on the family residence, he now pays significantly less than he did when the marriage was dissolved. Moreover, the respondent had the financial wherewithal to pay $10,000 in educational expenses that he believed he was not required to pay. Insofar as the petitioner's income and assets are concerned, we believe that any modification warranted by her employment was adequately resolved through the court's reduction of maintenance based on the settlement agreement.

■■ ■ Nor do we find any abuse of discretion by the court in finding the respondent to be in contempt for failure to pay maintenance. Noncompliance with an order to pay maintenance constitutes *prima facie* evidence of contempt, and after nonpayment is shown, the burden shifts to the defendant to show that he is unable to pay. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 285, 469 N.E.2d 167, 175.) Respondent failed to meet that burden. While he presented evidence of outstanding debts, neither the tax liability nor the debt owed to the hospital could have been responsible for respondent's failure to pay maintenance since he had made no payments towards those debts by the time of the hearing. We find that the record supports the trial court's finding that the respondent had the ability to pay maintenance during the period in question.

Finally, although respondent does not appear to contest the award of attorney fees to the petitioner, we note that a party who must use the judicial process to secure compliance with the terms of a divorce judgment is entitled to reasonable attorney fees. (*In re Marriage of Moriarty* (1985), 132 Ill. App. 3d 895, 478 N.E.2d 537.) We find the fees to be reasonable. Accordingly, we affirm the judgment of the circuit court of Madison County.

Affirmed.

HOWERTON and RARICK, JJ., concur.