*In re* MARRIAGE OF JAMES E. RUSHING, Petitioner-Appellee and Cross-Appellant, and MARY E. RUSHING, Respondent-Appellant and Cross-Appellee.

First District (6th Division)   Nos. 1—92—0787, 1—92—1196, 1—92—1423 cons.

Opinion filed November 5, 1993.

Charles O. Brizius, of Chicago, for appellant.

Thomas W. Hunter, of Barrington, for appellee.

JUSTICE EGAN delivered the opinion of the court:

After 30 years of marriage, James and Mary Rushing were divorced on September 3, 1985. Pursuant to the marital settlement agreement, James paid Mary $1,700 per month in maintenance. On June 15, 1989, Mary filed an emergency petition for enforcement of the maintenance provisions of the judgment; she claimed an arrearage amounting to $19,900. On August 8, 1989, James filed a petition for termination or modification of maintenance. On September 22, 1989, Judge Kathy Flanagan entered a withholding order for $900 per month for the maintenance arrearage of $21,400; the order provided that the remaining issue for termination or modification of maintenance was reserved for further determination. On May 23,

1991, a hearing was conducted before Judge Ronald Olson on the issue of modification of maintenance. On October 18, 1991, Judge Olson entered an order modifying maintenance from $1,700 to $900 per month. He also entered a judgment for Mary for $21,400 plus the agreed amount of $3,500 for interest on the maintenance arrearage.

Judge Olson later awarded Mary's attorney $4,000 in fees. Mary appeals from the order modifying maintenance and the amount of the award of attorney fees. James also appeals from the order awarding attorney fees. He contends that the judge erred in granting attorney fees without a hearing.

James and Mary Rushing were married on January 29, 1955. Five children were born during the marriage, and the youngest child was 21 years old at the time of the divorce. The judgment of dissolution was entered on September 13, 1985. At the time judgment was entered, James was 58 years old and Mary was 54 years old. On December 31, 1985, James married Nancy Rushing and later moved to California.

The marital settlement agreement, incorporated in the judgment of dissolution, provided that James was to pay $1,700 per month based upon James' net base pay of $3,800 per month and $65,000 annual gross income and upon Mary's net income of approximately $470 per month, and $8,000-per-year gross income. Maintenance was to terminate upon the death of either party; the remarriage of Mary; or 10 years after the entry of the judgment of dissolution. Mary would be permitted to earn $10,000 per year above her current earnings before James had the right to petition for a reduction in maintenance payments on the basis of Mary's income. James would be allowed to earn $10,000 above his current income before Mary had the right to petition for an increase in maintenance based upon James' increased earnings.

The petition for enforcement that Mary filed alleged that James had not paid, or only partially paid, maintenance for March 1988 through June 1989. She sought an assessment of the maintenance arrearage and an entry of a withholding order against James' wages, to be enforced against James' employer in California.

The petition for termination or modification of maintenance filed by James alleged that the increased living expenses in California coupled with the expenses of his remarriage and a lower paying job warranted a reduction or termination in maintenance. James also alleged that Mary, over four years since the divorce, had ample time to rehabilitate herself and become financially independent.

On September 20, 1989, Judge Flanagan had before her Mary's petition for enforcement of judgment and James' petition for termination or modification of maintenance. She entered an order

directed to James' employer to withhold $900 per month from James' wages and to pay the withheld money to Mary. The case was continued until November 14, 1989. The order provided that "[a]ll remaining issues are reserved for further determination."

A trial on the petition for termination or modification of maintenance began on May 23, 1991, before Judge Ronald Olson. The parties stipulated to James' employment income, which was as follows:

| Year | Gross Employment Income | Net Employment Income |
|------|------------------------|----------------------|
| 1985 | $64,992.00 | $45,600.00 |
| 1989 | 51,230.27 | 38,616.81 |
| 1990 | 56,143.38 | 44,247.59 |
| 1991 | 60,900 (includes bonus for 1,500.00) | 46,650.00. |

James submitted a breakdown of his expenses which showed that his actual monthly living expenses as of May 7, 1991, were $3,283 and that in 1985 they were $1,195. His net monthly income, including the $900 deduction that he was ordered to pay to Mary, totalled $2,801. He also listed a monthly debt service of $509, leaving him with a deficit of $991 per month.

The combined gross wages of James and his current wife Nancy were $95,130 in 1989, and $102,411 in 1990. Nancy Rushing's gross earnings were $43,900 in 1989, and $46,267 in 1990. Her daughter received $600 per month in social security benefits. James admitted on cross-examination that Nancy has the ability to contribute to the expenses of maintaining the condominium in California in which they live. On redirect, James testified that he has to maintain a certain standard of living for his job, including good clothes and a newer automobile. He could not live in a studio apartment, as he did in Evanston when he was initially divorced. James also testified that he could not divide the mortgage, real estate taxes, or insurance by three individuals because he would need that type of condominium even if he were living alone in California. He divided the utilities, groceries, and sundries by three to arrive at his portion of those expenses. His car was used exclusively by him.

Mary testified to her monthly income and expenses. Her gross monthly income was $1,087 in 1991. She worked approximately 35 hours per week as a store clerk at the Book Bin in Northbrook. Her employer does not offer any employee full-time hours. After her required deductions are taken, her net monthly income was $869. Her monthly expenses were $1,716. She also submitted a breakdown of her expenses.

Mary also included a list of items that she was doing without since she had received only the withholding amount of $900 per month and not the full $1,700 per month. That list totalled $1,096

per month. Mary also testified that she was using her daughter's car while her daughter was in Philadelphia, but she would have to give the car back when her daughter returned in September.

On October 15, 1991, after the parties submitted written closing arguments, Judge Olson ruled that he would grant the petition for modification; he set the amount at $900 a month, the amount that had been previously been set as a "temporary maintenance figure [by Judge Flanagan]."

The judge entered a written order on October 18, 1991, which provided that the maintenance would be modified to $900 per month effective September 22, 1989, "the date of the Temporary Modification of this case." The order also entered a judgment in favor of Mary Rushing in the amount of $21,400 for arrearages plus interest in the agreed amount of $3,500. Leave was granted to file petitions for attorney fees within 30 days of the order, and "[a]ll limits placed upon the earnings of Mary in the judgment" of dissolution were removed.

On January 31, 1992, the judge considered Mary's motion to reconsider and the motion of both parties for attorney fees pursuant to section 508 of the Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1991, ch. 40, par. 508.) Mary's attorney sought $35,634 in fees. The judge awarded $4,000 in fees to be paid by James. He also denied Mary's motion to reconsider. James' attorney sought from Mary $37,750, not including additional charges "relative to the effecting of the decree." His petition for fees was denied.

Mary first contends that the judge abused his discretion in modifying her monthly maintenance from $1,700 to $900 a month because, she alleges, the evidence fails to establish any substantial change in James' circumstances since 1985.

A trial judge may modify a maintenance award, "only upon a showing of a substantial change in circumstances." (Ill. Rev. Stat. 1991, ch. 40, par. 510.) A party seeking modification bears the burden of showing this change. (*In re Marriage of Ingram* (1989), 185 Ill. App. 3d 395, 541 N.E.2d 731.) The trial judge's decision as to modification of a maintenance award will not be disturbed absent an abuse of discretion. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 469 N.E.2d 167.) In determining whether and to what extent a maintenance award may be modified, the trial judge may consider the same statutory factors which are to be assessed in making the initial maintenance award. (*In re Marriage of Bryant* (1990), 206 Ill. App. 3d 167, 563 N.E.2d 834.) These factors include: (1) the financial resources of the party seeking maintenance, including marital property apportioned to her, and her ability to meet her needs independently;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment; (3) the standard of living established during the marriage; (4) the duration of the marriage; (5) the age and the physical and emotional condition of both parties; (6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those needs of the spouse seeking maintenance; and (7) the tax consequences of the property division upon the respective economic circumstances of both parties. Ill. Rev. Stat. 1991, ch. 40, par. 504.

James contends that the change in circumstances that justify the reduction in maintenance "was that while his income had fluctuated during the years that he was living in California, his expense had dramatically changed while he was there."

According to James' own figures, his monthly net income at the time of the dissolution of marriage was $3,800; his expenses were $1,195; and the maintenance payments were $1,700; leaving him a surplus of $905 per month. His claimed expenses for 1985 amounted to zero for clothing, telephone, laundry, dry cleaning, auto repairs, auto insurance, clubs, social obligations, entertainment, newspapers, magazines, books, gifts, donations and vacations. His 1991 expenses for those items totalled approximately $745 per month. He also included in his 1991 expenses an additional $41 per month for travel to Chicago for legal purposes and $79 per month for income tax preparation. He did not list such items of expense for 1985. He also lists, as a 1991 debt, $25,706, which he owes for attorney fees in this litigation.

■ Mary does not contend that James may not claim most of the additional expenses in 1991 that he did not claim in 1985, but she does dispute his right to claim certain specific items. She argues that James should not be entitled to claim the entire cost of the mortgage, insurance and tax payments on the California condominium; mortgage payments on his father's home in Arkansas; and payments on a loan from his present wife. James has not responded to Mary's argument which is addressed to those specific items. We agree with Mary that those items should not have been considered in determining whether James' expenses had increased to the point that they could be considered a change in circumstances that would justify a reduction in Mary's maintenance.

In *Berkheimer v. Berkheimer* (1978), 63 Ill. App. 3d 19, 380 N.E.2d 474, the court held that no change of circumstances warranted a reduction in maintenance where the husband's only change was increased expenses from a second marriage. Although the husband's expenses had increased since the divorce, the increased expenses

were largely the result of the purchase of a home pursuant to his remarriage. The court held that expenses related to a second marriage are only of secondary consideration *vis-a-vis* the obligation owed to a former wife on the question of support.

In another earlier case, cited in *Berkheimer*, the court held that the obligations to a former wife take precedence over the obligations that arise from a subsequent remarriage. (*Gregory v. Gregory* (1964), 52 Ill. App. 2d 262, 202 N.E.2d 139 (remarriage and birth of child by second marriage does not present, in itself, a change of circumstances sufficient to warrant modification).) The *Gregory* court specifically stated its reasoning:

> "Although the effect may be to deprive a second wife of support, from a legal standpoint, the first come first and the second come second. In other words, the first obligations must be met before the second obligations can or will be considered." *Gregory*, 52 Ill. App. 2d at 268.

Mary contends that expenses for the condominium in California (mortgage, taxes, assessment, insurance) should be divided by three for the occupants of the home and James should pay only his one-third share because his wife is financially independent and her daughter receives $600 per month in social security benefits. James maintains that he would have to live in some type of comparable living quarters, despite his remarriage, thereby permitting him to claim the full condominium expenses. We agree that James should not be permitted to consider the entire cost of maintenance of the condominium as his expense. James claimed a total monthly expense for mortgage payment, taxes, insurance and other expenses on the California condominium of $1,434. Even if James were to be held liable for one-half of the costs, rather than one-third, that expense would be reduced by $717 per month.

Mary next contends that the mortgage for James' father's home in Arkansas should be disallowed. Again we agree. In *In re Marriage of Zeman* (1990), 198 Ill. App. 3d 722, 556 N.E.2d 767, the court held that a voluntary decision to undertake non-legal obligations should not be considered in determining whether maintenance should be modified. Those monthly payments of $166 for James' father's home should not have been considered.

James claims that his regular monthly debt service also constitutes a significant change of circumstances. We disagree. One of those debts is of a limited duration. James owed $2,700 to his dentist; he alleged a debt of $300 a month. That debt should have been paid by now. James also owes $10,396 to his second wife for a loan she made to repay his back taxes. According to his figures, he is paying

that back at a rate of $206 a month. That debt arose when James borrowed the money from his second wife to pay his own 1988 income tax obligations. He apparently omitted $26,000 from his 1988 income tax return for independent services to a previous employer. In *Geittmann v. Geittmann* (1984), 126 Ill. App. 3d 470, 467 N.E.2d 297, the appellate court held that indebtedness incurred by the husband personally or through his professional corporation was not a basis for reduction of maintenance. The court said:

"Where a change of circumstances is not fortuitous, but rather is brought about by the party seeking reduction or eradication of maintenance obligations, the moving party may not claim an entitlement to modification on equitable grounds. [Citation.]" *Geittmann*, 126 Ill. App. 3d at 473.

It is inescapable to us that if any belt-tightening should result from James' failure to pay proper income taxes, the belt-tightening should be done by James, not by Mary. In summary, the allowable expenses of James should be reduced by at least one-half of the condominium expenses, all of the payment on his father's home and all of the payment for his loan from his wife. By our calculations those items total $1,089. Consequently, it was improper to reduce Mary's monthly payments by $800. We need not consider Mary's additional argument that the amount of $41 per month for travel to Chicago for legal purposes and $79 per month for income tax preparation should not be considered. We conclude, therefore, that James has failed to maintain his burden of establishing a change in circumstances that would justify a reduction in maintenance and that the trial judge abused his discretion. That part of the judgment is reversed.

Both parties have appealed the judge's rulings on attorney fees. James' only claim of error is that the judge failed to grant him a hearing on his right to attorney fees. In *Lewanski v. Lewanski* (1978), 59 Ill. App. 3d 805, 375 N.E.2d 961, the court held that a full hearing should be granted when requested on the issue of reasonable fees and allocation of those fees.

■ James cannot claim that he was denied a hearing on the allocation of fees. At the January 31, 1992, hearing, James presented his petition for fees and argued extensively that his fees should be allocated to the respondent. When the judge, in effect, denied James' petition for fees, his attorney did not argue that he had not been given a hearing. On February 5, 1992, James' attorney did not appear, and the judge entered a written order providing that James should pay to Mary the amount of $4,000 toward her attorney fees and that all other issues would be reserved for further order of the court.

On March 25, 1992, James' attorney sought to modify the Febru-

ary 5 order because, he claimed, it did not completely resolve the issue of fees. The judge then modified the February 5 order to provide as follows:

> "Each party shall be responsible for the fees of his or her own attorney, unless already paid, each party having been advised of the right to a full hearing with respect to the same."

James' attorney did not ask for a hearing on his right to fees from Mary. We read the final order of March 25 to mean that the attorneys would be entitled to a full hearing to determine the amount of fees they would be entitled to *from their own clients*. We conclude that James did have a hearing on any claim of fees from Mary and, further, that he has waived his right to raise the question in this court.

We turn now to Mary's claim that the judge abused his discretion in awarding her only $4,000 in fees from James. Ordinarily the party for whom legal services were rendered is responsible for those fees. However, section 508(a) of the Act provides that a court may order an ex-spouse to pay a reasonable amount for attorney fees necessarily incurred by the other spouse in connection with the maintenance or defense of any proceeding under the Act. (Ill. Rev. Stat. 1991, ch. 40, par. 508(a).) A party seeking an award must show a financial inability to pay the fees and a corresponding ability of the ex-spouse to pay the fees. Financial inability does not require a showing of destitution. (*In re Marriage of McFarlane* (1987), 160 Ill. App. 3d 721, 513 N.E.2d 1146.) The allowance of attorney fees in a divorce proceeding rests in the sound discretion of the trial judge. (*Lewanski v. Lewanski* (1978), 59 Ill. App. 3d 805, 375 N.E.2d 961.) The judge considered both allocation of fee petitions and commented about the "outrageous" fees that were generated by both sides. He thought that the attorney fees had gone "amuck" and that the amount of money in controversy was dwarfed by the overall attorney fees. He specifically considered the economic situation of both parties and determined that both parties should determine the costs of their own fees. We conclude that he did not abuse his discretion in the awarding and denying of attorney fees. The orders allowing $4,000 attorney fees to Mary and denying attorney fees to James are affirmed.

Judgment affirmed in part and reversed in part.

RAKOWSKI and GIANNIS, JJ., concur.