Theodore F. MELICHAR

v.

Betty Jane OST.

Civ. No. K–78–498.
Bankruptcy No. K–76–00921 G.

United States District Court,
D. Maryland.

Nov. 22, 1980.

Bert W. Kapinus, Mount Rainier, Md., for appellant.

Charles C. Bowie, Rockville, Md., for appellee.

FRANK A. KAUFMAN, District Judge.

This case is before this Court on appeal for the third time following two remands to the Bankruptcy Judge. Neither the factual recitations nor the discussion of law set forth in the prior opinions [1] of this Court or the Bankruptcy Judge will be repeated in

1. The following documents, read in the following order, provide a chronological history of the developments in this case:
(a) The Bankruptcy Judge's first opinion in this case, filed February 2, 1977, set forth as Attachment A to this Court's first opinion in *Melichar v. Ost*, 445 F.Supp. 1162, 1170–71 (D.Md.1977).

(b) This Court's said first opinion, 445 F.Supp. 1162 (D.Md.1977).
(c) The Bankruptcy Judge's second opinion, following the first remand by this Court, filed February 16, 1978. *See* Appendix 1 hereto.
(d) This Court's second opinion, filed November 14, 1978, once again remanding the

full.[2]  In response to this Court's latest (*i. e.*, second) remand (Nov. 14, 1978), the Bankruptcy Judge filed, on December 21, 1979, an "Additional Statement of Facts and Conclusions of Law." It is from that opinion which defendant Melichar[3] appeals for the third time.

In this case, the husband seeks to be discharged from his obligations to his former wife under paragraph 8 of the MSA.[4] The wife objects to that discharge. The burden of proof is on the plaintiff-wife to show that the defendant-husband is not entitled to discharge of his payment obligations under paragraph 8.[5] To be specific, pursuant to section 17(a)(7) of the Bankruptcy Act, 11 U.S.C. § 35(a)(7),[6] the burden is on the wife to show that the husband's

case to the Bankruptcy Judge.  *See* Appendix 2 hereto.

(e) The Bankruptcy Judge's third opinion, following the second remand by this Court, filed December 21, 1979.  *See* Appendix 3 hereto.

(f) This Court's Memorandum to Counsel dated June 10, 1980 asking counsel to submit legal memoranda with regard to Illinois divorce law.  *See* Appendix 4 hereto.

(g) Letter to the Court dated July 31, 1980 from counsel for defendant-husband indicating that he did not believe a further legal memorandum on Illinois law would be helpful and that his client would rest on the legal memoranda previously filed in this case.  *See* Appendix 5 hereto.

(h) Letter to the Court dated July 31, 1980 from counsel for plaintiff-wife indicating that he too would rely on the legal memoranda previously submitted on his client's behalf.  *See* Appendix 6 hereto.

(i) This Court's September 3, 1980 Memorandum to the Bankruptcy Judge, with a copy to counsel.  *See* Appendix 7 hereto.

(j) The Bankruptcy Judge's September 8, 1980 letter to this Court.  *See* Appendix 8 hereto.

As noted above, despite this Court's aforementioned June 10, 1980 Memorandum to Counsel, *see* Appendix 4 hereto, counsel for both parties declined the opportunity to submit any further legal memoranda on the applicable Illinois case and statutory law.  *See* Appendices 5 and 6 hereto.  In the light of said responses, this Court reconsidered its earlier requests to counsel, decided not to require counsel to submit additional memoranda of law, and instead undertook, on its own, an analysis of the relevant Illinois divorce law.

2.  However, for ease of reading, the following two paragraphs of the parties' marital separation agreement (hereinafter "MSA") are set forth in this footnote, in whole or in part, even though the text of paragraph 8 of the agreement has already been set forth in full in this Court's first opinion, 445 F.Supp. *supra* at 1163:

Paragraph 8 of the MSA, the part of the agreement from which the husband now seeks discharge, provides as follows:

The husband further covenants and agrees that he shall pay to the wife as and for a lump sum settlement in lieu of alimony, the sum of SIXTY SIX THOUSAND FIVE HUNDRED FIFTY AND NO/100 ($66,550.00) DOLLARS, said sum to be payable at the rate of FIVE HUNDRED FIFTY AND NO/100 ($550.00) DOLLARS per month for a period of ONE HUNDRED TWENTY ONE (121) months, the first of said payments to be made simultaneously with the execution of this agreement by by [sic] both parties.  It is further provided that the husband shall be liable for such monthly installment payments for a period of ONE HUNDRED EIGHT (108) months or nine (9) years, regardless of the remarriage of the wife.  The parties further covenants [sic] and agree that after the expiration of the aforesaid ONE HUNDRED EIGHT (108) months or nine (9) year period, if the wife is already married or if the wife should remarry, the obligation of the husband for any future payments shall abate, however, the husband shall be liable for any past due unpaid installments then due and owing.  In the event of the death of the husband or wife, at any time during the ONE HUNDRED TWENTY ONE (121) months, there shall be a one hundred percent (100%) abatement of the respective future installments due and owing to the wife pursuant to the provisions of this agreement.

Paragraph 9 of the MSA provides in pertinent part that, in the event of divorce, " * * * both parties do hereby waive any and all claims to alimony * * * with the full and complete understanding that once having waived said alimony each shall be forever barred from claiming the same in any Court."

3.  Mr. Melichar, appellant, was the defendant in the proceedings before the Bankruptcy Judge and is referred to herein as "husband."  Mrs. Ost, appellee, was the plaintiff in the proceedings below and is referred to herein as "wife."

4.  *See* note 2, *supra*.

5.  *See* discussion at pp. 961–964, *infra*.

6.  For ease of reading, the text of section 17(a)(7), 11 U.S.C. § 35(a)(7), is once again set forth herein.  That section provides in relevant part as follows:

(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts,

monetary obligations under paragraph 8 of the MSA are alimony, and hence non-dischargeable, and do not constitute a property settlement.

In its first opinion in this case, this Court concluded that Illinois law governed the interpretation of the MSA. *See Melichar v. Ost, supra* at 1167 n.4, and cases cited therein. Subsequent to that first opinion, Judge Blair of this Court wrote that, in a bankruptcy case such as this one, the Bankruptcy Court is required to look to the substance of the payment obligation in question, and not to the labels imposed by state law, in determining whether the obligation is dischargeable under section 17(a)(7) of the Bankruptcy Act. In that case, *Shacter v. Shacter*, 467 F.Supp. 64 (D.Md.1979), the husband appealed from an order of the Bankruptcy Court declaring his payment obligations under a separation agreement to be in the nature of alimony and, hence, non-dischargeable. The husband argued that since the payments required by the separation agreement did not satisfy the technical requirements of alimony under Maryland law, the debt was in the nature of a property settlement and, thus, dischargea-

ble in bankruptcy. Rejecting that contention, Judge Blair stated (at 66):

> Payments required by a contract for the support and maintenance of a wife are not dischargeable in bankruptcy even though they do not constitute payments for alimony under state law, see *In re Adams*, 25 F.2d 640, 642 (2d Cir. 1928), and even though the separation agreement itself contains provisions concerning the settlement of property rights of the parties, see *In re Ridder*, 79 F.2d 524 (2d Cir. 1935), *cert. denied*, 297 U.S. 721, 56 S.Ct. 599, 80 L.Ed. 1005 (1936). In determining whether certain obligations are liabilities for support, a court should look to the substance of the obligation, and not to labels imposed by state law. *In re Nunnally*, 506 F.2d 1024, 1027 (5th Cir. 1975).[7]

"Alimony" is defined as follows for purposes of the Bankruptcy Act in *Nichols v. Hensler*, 528 F.2d 304, 307 (7th Cir. 1976):

> The authorities are clear, and the parties do not dispute, that "alimony" in section 17(a)(7) of the Bankruptcy Act means payments in the nature of support for a former spouse. [Citations omitted.]

whether allowable in full or in part, except such as * * * (7) are for alimony due or to become due, or for maintenance or support of a wife or child, or for seduction of an unmarried female or for breach of promise of marriage accompanied by seduction, or for criminal conversation; * * *.

Under the Bankruptcy Reform Act of 1978, 92 Stat. 2549, 11 U.S.C. § 101 *et seq.*, which went into effect on October 1, 1979, the subject of dischargeability of alimony and support obligations is covered by 11 U.S.C. § 523(a)(5). That section, like section 17(a)(7) of the former Bankruptcy Act, exempts from discharge payment obligations for alimony, maintenance, and support.

The Senate Report accompanying the Bankruptcy Reform Act of 1978 expressly provides: "What constitutes alimony, maintenance, or support, will be determined under the bankruptcy law, not State law." S.Rep.No.95–989, 95th Cong., 2d Sess. 79, *reprinted in* [1978] U.S.Code Cong. & Ad.News, pp. 5787, 5865. The House Report contains virtually identical language. *See* H.R.Rep.No. 95–595, 95th Cong., 2d Sess. 364, *reprinted in* [1978] U.S. Code Cong. & Ad.News, pp. 5787, 6320. Both reports also state that the inquiry under the bankruptcy law is "whether a particular agree-

ment to pay money to a spouse is actually alimony or a property settlement." *Id.*

This case is governed by the provisions of section 17(a)(7) of the prior Bankruptcy Act since it was filed before the effective date of the Bankruptcy Reform Act of 1978. *See* Pub.L. 95–598, Title IV, § 403(a), 92 Stat. 2683 (Nov. 6, 1978).

7. On appeal, the Fourth Circuit affirmed in an unpublished *per curiam* opinion. *Shacter v. Shacter*, 610 F.2d 813 (4th Cir. 1979). Therein, the Fourth Circuit noted that the "Maryland definition of alimony is not technically met, since the separation agreement does not provide for termination of the obligation of support and maintenance upon the death of the husband." (Slip op. at 2.) The opposite is true herein. *See* n.2, *supra*. Accordingly, with regard to that factor, the within case would appear to be a stronger case for alimony than was *Shacter*, though it should be noted that neither Judge Blair's opinion in *Shacter* nor the Fourth Circuit's affirmance relates the facts in detail. As is discussed *infra* in greater detail, the inevitable balancing called for by applicable principles of federal and Illinois law requires close factual analysis in this case.

If the debt is determined to be one arising under a property settlement, it is discharged by bankruptcy. [Citations omitted.]

The inquiry required herein is whether the payments under paragraph 8 of the MSA were intended by the parties to fulfill the husband's common law duty to support his wife or, rather, were intended to constitute consideration for an overall property settlement. While that determination is ultimately governed by federal law, and while state law labels are not controlling, state law, nevertheless, is not only relevant, but indeed in the end may provide controlling guidance with regard to construction of the husband's underlying obligation and determination of the intent of the parties.[8]

The issues herein are rather easy to state. However, they are by no means easy to resolve. Under the applicable federal and Illinois[9] law, there would appear to be five different possible classifications of the payment obligations in question herein:

(1) A property settlement pursuant to section 17 of the Illinois Divorce Act, Ill. Rev.Stat. ch. 40, ¶ 18 (1971)[10].

**8.** The ultimate determination of whether a payment obligation under a separation agreement is dischargeable under the bankruptcy law requires the threshold determination of the intent of the parties to the agreement. *See, e. g., Barth v. Barth,* 448 F.Supp. 710 (E.D.Mo.1978); *In re Baldwin,* 250 F.Supp. 533 (D.Neb.1966). It is also to be noted that since separation agreements, like the MSA herein, are often negotiated by lawyers, with an eye toward the obligations imposed by the relevant state divorce law, the provisions of such law, while not dispositive, are clearly relevant in determining that intent.

**9.** The parties herein were divorced prior to October 1, 1977, the effective date of the new Illinois Marriage and Dissolution of Marriage Act, Ill.Rev.Stat. ch. 40, ' 101 *et seq.* (1977), and when the former Illinois Divorce Act, Ill. Rev.Stat. ch. 40, ' 1 *et seq.* (1975), was in force and effect.

Section 801 of the new Act provides as follows:

(a) This Act applies to all proceedings commenced on or after its effective date.

(b) This Act applies to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered. Evidence adduced after the effective date of this Act shall be in compliance with this Act.

(c) This Act applies to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date of this Act.

(d) In any action or proceeding in which an appeal was pending or a new trial was ordered prior to the effective date of this Act, the law in effect at the time of the order sustaining the appeal or the new trial governs the appeal, the new trial, and any subsequent trial or appeal.

In *Lamp v. Lamp,* 73 Ill.App.3d 713, 29 Ill.Dec. 792, 392 N.E.2d 349, 352 (1979), the Court discussed section 801 as follows:

The new Marriage and Dissolution of Marriage Act is applicable to proceedings commenced after October 1, 1977 involving the modification of maintenance (periodic alimony) and child support provisions of divorce decrees entered prior to the effective date of the new Act. (Ill.Rev.Stat.1977, ch. 40, par. 801(c); *Pierce v. Pierce,* 69 Ill.App.3d 42, 25 Ill.Dec. 511, 386 N.E.2d 1175 (5th Dist. 1979).) However, as to property settlement provisions, including awards of alimony in gross, incorporated into divorce decrees which became final before the effective date of the new Act, the law then in effect, including the provisions of the former Divorce Act (Ill.Rev.Stat.1975, ch. 41 par. 1, *et seq.*) would govern. (*Pierce v. Pierce; Staub v. Staub,* 67 Ill.App.3d 1004, 24 Ill.Dec. 630, 385 N.E.2d 771 (5th Dist. 1978).) * * *

In the within case, neither periodic alimony nor child support is involved. *See* discussion at p. 956, *infra.* As indicated in *Lamp, supra,* the new Act would accordingly not appear applicable herein. But whether or not the new Act is applicable, the former Illinois law, which was in force and effect when the MSA was executed, would appear relevant in connection with the determination herein of the intent of the parties at the time they entered into the MSA. *See also Pacione v. Reed,* 81 Ill.App.3d 600, 37 Ill.Dec. 426, 402 N.E.2d 316, 320 (1980), in which it is indicated that there is little difference in force and effect of the new Illinois Act as compared with the former Illinois law in connection with the determination of whether given payments constitute periodic alimony or alimony in gross, or are part of a property settlement.

**10.** *Section 17 of the Illinois Divorce Act provides as follows:*

Whenever a divorce is granted, if it shall appear to the court that either party holds the title to property equitably belonging to the other, the court may compel conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable.

Under that statutory provision, if one of the parties to a divorce proceeding requests that

(2) Periodic alimony pursuant to section 18 of the Illinois Divorce Act, Ill.Rev.Stat. ch. 40, ¶ 19 (1971),[11] *i. e.,* alimony "for an indefinite period of time and usually for an indefinite total sum," *Walters v. Walters,* 341 Ill.App. 561, 94 N.E.2d 726, 729 (1950), payable in installments.

(3) Gross alimony (or alimony in gross, as it is apparently interchangeably labeled) pursuant to section 18 of the Illinois Divorce Act, *supra, i. e.,* a fixed sum payable in lump at one time or in installments over a fixed period of time.

(4) A non-section 17 property settlement, *i. e.,* a fixed sum payable in lump at one time or in installments over a fixed period of time.

(5) Even if the payment obligations in question do not specifically fall within the technical definitions of periodic or gross alimony under section 18 of the Illinois Di-

vorce Act, *supra,* as those terms have been interpreted by the Illinois courts, the payments may still be classified as alimony under both federal and/or Illinois law if they were intended by the parties to satisfy the husband's common law duty to support his former wife.[12]

■ The intention of the parties governs the determination as to which of the five types of agreement is in fact involved in a given case. If the parties' intent was not the discharge of a common law duty of support, then the payment obligations are in the nature of a property settlement and are not alimony, either periodic or in gross. If the payments were intended by the parties to discharge a common law duty of support and the payments were to be made over an indefinite period of time, subject, as a matter of law, to modification by a court

the Court order that title to a particular piece of property be conveyed to him from his spouse as part of the divorce decree, that request must be specially pleaded. *See Palacio v. Palacio,* 33 Ill.App.3d 1074, 339 N.E.2d 427, 430 (1975). Neither of the parties herein has ever requested any Illinois court to transfer to him or her title to a particular piece of property from the other party to the marriage. Thus, the provisions of section 17 are seemingly inapplicable since the parties reached a voluntary settlement agreement as to the division of their property and asked only that that agreement be incorporated into the final divorce decree.

11. Section 18 of the Illinois Divorce Act provides in relevant part as follows:

When a divorce is decreed, the court may make such order touching the alimony and maintenance of the wife or husband, the care, custody and support of the children, or any of them as, from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just * * *. The court may order the husband or wife, as the case may be, to pay to the other party such sum of money, or convey to the party such real or personal property, payable or to be conveyed either in gross or by installments as settlement in lieu of alimony, as the court deems equitable.

* * * * * *

Irrespective of whether the court has or has not in its decree made an order for the payment of alimony or support it may at any time after the entry of a decree for divorce, upon obtaining jurisdiction of the person of the defendant by service of summons or proper notice, make such order for alimony

and maintenance of the spouse and the care and support of the children as, from the evidence and nature of the case, shall be fit, reasonable and just, but no such order subsequent to the decree may be made in any case in which the decree recites that there has been an express waiver of alimony or a money or property settlement in lieu of alimony or where the court by its decree has denied alimony.

* * * A party shall not be entitled to alimony and maintenance after remarriage; but, regardless of remarriage by such party or death of either party, such party shall be entitled to receive the unpaid installments of any settlement in lieu of alimony ordered to be paid or conveyed in the decree.

* * * * * *

12. This fifth category may well not be a separate category. Rather, any agreement which falls within it may well fall within either category two or category three. Indeed, the Illinois case law reviewed and analyzed *infra* in the body of this opinion may so teach. In any event, however, federal law would seem to require that this Court recognize, insofar as this bankruptcy case is concerned, this fifth category since neither state law labels nor state law classifications may be permitted in a bankruptcy case to obliterate the basic distinction between an agreement calling for alimony as opposed to a property settlement, namely, whether or not the agreement is in discharge of the common law duty of the spouse-obligator to the other spouse. *See Shacter v. Shacter, supra.*

if the situations of the parties changed, then periodic and not gross alimony is seemingly involved. If, on the other hand, the parties intended fixed payments in lump or in installments over a fixed period of time, then gross and not periodic alimony is apparently involved.

If periodic alimony is involved and the beneficiary-spouse remarries, "the agreement cannot be enforced [under Illinois law, after such remarriage] despite the specific provisions in the agreement that payments will continue despite plaintiff's remarriage." *Richheimer v. Richheimer*, 9 Ill. App.3d 376, 292 N.E.2d 190, 193 (1972). In this case, there is no provision for such continuation of payments after the plaintiff-wife's remarriage. Thus, *a fortiori*, if periodic alimony is involved—it is to be noted that Judge Goldburn held that periodic alimony is not involved, and this Court agrees in that respect—then paragraph 8 of the MSA is unenforceable under Illinois law and the issue of whether the defendant-husband's obligations under the MSA are dischargeable in bankruptcy need not be reached.

Thus, if periodic alimony is involved herein, the defendant-husband is entitled to judgment because of Illinois law. If alimony in gross is involved, the defendant-husband is not entitled to the discharge under the bankruptcy law which he seeks and plaintiff-wife is entitled to judgment herein. If a property settlement is involved, the defendant-husband is entitled to such discharge under the bankruptcy law and to judgment herein.

The agreement in this case calls for monthly payments for a fixed amount over a fixed period of either 108 or 121 months, depending on whether the wife remarries. The agreement further provides that if either of the parties dies, the husband's payment obligations are extinguished.

Illinois case law is instructive even though the lines of definition and distinction between alimony and property settlement and between periodic and gross alimony are certainly not easy to draw. The key issue is whether alimony of any type as opposed to a property settlement was intended. That issue requires an analysis of Illinois statutory and case law.

In *Walters v. Walters*, 341 Ill.App. 561, 94 N.E.2d 726, 729 (1950), *aff'd*, 409 Ill. 298, 99 N.E.2d 342 (1951), the Court enumerated the distinctions between "periodic" alimony and alimony in gross:

* * * [Periodic or ordinary alimony] is for an indefinite period of time and usually for an indefinite total sum. It is based upon the husband's income and the needs of the wife determined from the standpoint of the manner in which they have been accustomed to live. It is modifiable after decree when the wife's needs increase or decrease, or when the husband's ability to pay increases or decreases. This is so because it takes the form of periodic allowances which do not vest until they become due. It usually terminates upon the death of the husband, although by agreement payments may be made a charge upon the husband's estate after they become due. They are never a charge on a husband's estate in advance of the due date because they are not, prior to that time, vested. Payments of alimony from husband to wife are not based upon any consideration moving from wife to husband, but are based upon the common law duty of the husband to support his wife. "Alimony" in this sense of the word, is modifiable.

On the other hand, the phrase "alimony in gross" or "gross alimony" is always for a definite amount of money; the payment is always for a definite length of time; it is always a charge upon the husband's estate and has uniformly been held by our courts to be not modifiable.

Under Illinois law, either the husband or the wife may be ordered to pay alimony in a particular case. In determining the amount of an alimony award, the Court considers both the need of the party receiving the alimony as well as the ability of the other spouse to pay. *See, e. g., Adams v. Adams*, 398 Ill. 581, 76 N.E.2d 495 (1948); *Still v. Still*, 96 Ill.App.2d 320, 238 N.E.2d 613 (1968). In addition to the needs and

abilities of the parties, the Court also considers their respective ages, health, and social conditions, and whether or not one of the spouses is supporting children. *See Chalmers v. Chalmers*, 31 Ill.App.2d 1, 175 N.E.2d 613 (1961).

The Illinois case law indicates that, as a general principle, it is preferable, whenever possible, for the court to award periodic alimony as opposed to alimony in gross, since an award of periodic alimony can be modified if changes in the situations of the parties so warrant. Alimony in gross, on the other hand, is awarded only in special circumstances where there is reason to believe that the paying spouse has irregular habits or income and, thus, cannot be counted on to make regular payments. *Cf. Honey v. Honey*, 120 Ill.App.2d 102, 256 N.E.2d 121, 123 (1970) (emphasis in original), where the Court wrote:

> In *Schwarz v. Schwarz*, 27 Ill.2d 140, 188 N.E.2d 673, and *McGaughy v. McGaughy*, 410 Ill. 596, 102 N.E.2d 806, it is said that the usual and proper procedure is to award alimony in periodic payments for the factors of the respective need and abilities of the party then remain within the control of the court. In *Dmitroca v. Dmitroca*, 79 Ill.App.2d 220, 223 N.E.2d 545, it is said that alimony *in gross* may be awarded where the entire record shows that periodic payments are not feasible, as where the record shows that a spouse does not pay his bills or will not work, *Smothers v. Smothers*, 25 Ill.2d 86, 182 N.E.2d 758; *Miezio v. Miezio*, 6 Ill.2d 469, 129 N.E.2d 20; or where the husband was regularly intoxicated and refused to work, *Persico v. Persico*, 409 Ill. 608, 100 N.E.2d 904; or again, where the husband's occupation was so hazardous that he might not be able to continue to produce income, *Rodely v. Rodely*, 28 Ill.2d 347, 192 N.E.2d 347. * * *

The distinction between periodic alimony and alimony in gross under Illinois law seemingly rests essentially upon a differ-ence in the nature and timing of the payments. Both forms of payment, however, are apparently designed to serve the same purpose—to fulfill the obligation of the spouse with the greater wherewithall to support the other. Thus, in *Walters, supra,* 94 N.E.2d at 729, the Court stated that alimony payments are "based upon the common law duty of the husband to support his wife." [13]

Another type of payment, separate and distinct from either periodic or gross alimony, which may be made by one spouse to the other pursuant to a divorce decree is a property settlement. In that regard Illinois case law indicates that an Illinois divorce decree may incorporate the agreement of the parties to a marriage pursuant to which one spouse will make payments to the other spouse pursuant to an overall property settlement. Such payments, unlike payments for periodic alimony or alimony in gross, are designed not to fulfill either party's obligation to support the other, but rather to make a fair division of the parties' real and personal property and thus compensate the receiving spouse for the legal and equitable interest he or she may have in property accumulated by the parties during their marriage.

While, under Illinois law, alimony in gross is distinguishable from a lump-sum property settlement, the differences between the two are seemingly sometimes unimportant for purposes of applying that state's divorce law. Thus, for example, in *Walters, supra,* 94 N.E.2d at 730–31, the Court held the installment payments due under a divorce decree to be alimony in gross *or* a lump sum property settlement, as opposed to periodic alimony. In so doing, the Court stated (at 730–31) (emphasis in original):

> That the award may be payable in installments is not determinative of the question as to whether it is gross alimony or periodic alimony. Gross alimony may be payable in installments—whether all

---

13. *See also Chamberlin v. Chamberlin*, 119 Ill. App.2d 295, 256 N.E.2d 159, 161 (1970); *Kohler v. Kohler*, 31 Ill.App.2d 151, 175 N.E.2d 603, 604 (1961); *Balasa v. Balasa*, 11 Ill.App.2d 103, 136 N.E.2d 594, 595 (1956).

cash or all or partly on credit does not affect the essential nature of the transaction. *The principle involved is that gross alimony becomes a vested right from the date of the rendition of the judgment, and the manner of its payment in no wise affects its nature or effect.* It would be a harsh rule that would deprive parties of the right to make final property settlements merely because the one furnishing the money was unable to meet the entire obligation in one payment. * * *

A similar approach is illustrated by *Jacobson v. Jacobson,* 50 Ill.App.2d 244, 200 N.E.2d 379 (1964). In that case, the divorced husband brought an action seeking to be released from various payment obligations under a divorce decree on the grounds that his wife had remarried. In framing the issue to be resolved, the Court stated (at 380):

> The issue is whether defendant's obligation to pay the $15,000.00 specified in the decree is a settlement in lieu of alimony (sometimes called alimony in gross) or ordinary alimony. * * *

The Court held the payments in question to be "alimony in gross" or "settlement in lieu of alimony" and concluded that the wife was entitled to receive the unpaid installments regardless of her remarriage. In so doing, the Court wrote (at 380–81):

> The problem lies in defining what constitutes a "settlement in lieu of alimony." The method of payment, as well as the terms and labels used by the parties and those used in the decree, is not conclusive in determining the nature of the settlement. As the Court in *Walters v. Walters,* 341 Ill.App. 561, 574, 94 N.E.2d 726, 732 (1950), *aff'd,* 409 Ill. 298, 99 N.E.2d 342 (1951), said:
>
>> It is not the label placed by decree upon payments which constitutes them either alimony or lump sum property settlements; it is the elements inherent in the case as a whole, the record of which the decree is a part, which determine to what category such payments belong."

* * * The problem is a factual one— whether the payments stem from the natural and legal duty of a husband to support his wife or from the legal and equitable interests the wife may have in property accumulated by the parties during their marriage, that is, whether they stem from an alimony or from a property settlement.

Whether particular payments are referred to as "alimony in gross," "settlement in lieu of alimony," or "property settlement," the Illinois courts seemingly recognize that the parties to a marriage may, prior to divorce, negotiate an agreement under which one spouse agrees to pay the other a sum of money in satisfaction of the latter's legal and equitable interests in the couple's property. Such payments, unlike pure alimony, do not stem from the paying party's common law obligation to support the other spouse.

In *Planters Bank and Trust Company of Hopkinsville, Ky. v. Hite,* 263 N.E.2d 498 (Ill.1970), the husband and wife entered into a contract for settlement of property rights which was later incorporated into their divorce decree. Upon the divorced wife's death, the executor of her estate brought suit to recover the unpaid installments due under the settlement agreement. The husband contended that the payments in question were in the nature of alimony, and hence terminated on the death of the wife. In rejecting that contention by the husband, the Court stated (at 499–500) (emphasis in original):

> Were it not for the fact that the questioned paragraph [of the settlement agreement] had its very being in a divorce context, there could hardly be any question of the vested nature of the payments and the executor's right to their continuation, barring the contingency of partial or total disablement. * * *
>
> But regardless of the context, it seems to us that we would be warping meaning if we were to call these payments alimony. Rather, as we see it, this provision is part of the *quid pro quo* of settlement. *Walters v. Walters,* 490 Ill. 298, 99 N.E.2d

342. For us to say that these payments should cease upon her death would be to alter that *quid pro quo.* This we cannot do. People make agreements, not courts. Courts come in, as here, when agreement turns to disagreement but only to resolve the latter, not to remake the former.

But it is argued that all the earmarks of alimony are present if we would only look past form to substance. But the substance, as we see it, is not alimony, but rather an agreement to do something that must be done and continue to be done until a total agreed amount has been paid, barring one contingency. Simply because payments are in installments doesn't make such alimony. * * *

* * * The payments are, as we have said, part of the consideration of a property settlement, and being such, passed on the former wife's death to her executor. * * *

*See also Olson v. Olson,* 58 Ill.App.3d 276, 15 Ill.Dec. 812, 374 N.E.2d 247, 249 (1978) ("The purpose of a settlement agreement is not to provide a means for first determining whether alimony is in gross or periodic in form and then to proclaim that due to the in gross or periodic character of the alimony, certain rights and consequences exist. Rather, the purpose of a settlement agreement is to establish the rights and duties of the parties to the agreement in the first instance. It is those vested rights, freely given by each party, which must control."); *Kohler v. Kohler,* 31 Ill.App.2d 151, 175 N.E.2d 603, 605 (1961) ("[I]t is clear from 'the elements inherent in the case as a whole' (*Walters v. Walters,* 341 Ill.App. 561, 574, 94 N.E.2d 726, 732) that the parties intended the agreement as a property settlement and that consequently it was not subject to modification."); *Guyton v. Guyton,* 17 Ill.2d 439, 444–45, 161 N.E.2d 832, 835 (1959) ("The law looks with favor upon the amicable settlement of property rights and is reluctant to disturb decrees based thereon. *Walters v. Walters,* 409 Ill. 298, 99 N.E.2d 342. It has long been settled that parties to a divorce suit may voluntarily adjust their property interests and the amount, if any, to be paid as alimony; and

that when such agreements are made a part of the decree the parties are concluded thereby. *Storey v. Storey,* 125 Ill. 608, 18 N.E. 329, 1 L.R.A. 320; *Buck v. Buck,* 60 Ill. 241."); *Maybaum v. Maybaum,* 349 Ill.App. 80, 110 N.E.2d 78, 82–83 (1952) (applying California law, but indicating that the result would be the same under the law of Illinois: "Notwithstanding the fact that there is reference in the agreement to support money, we are convinced that the payment of $25,000 in installments was consideration for a property settlement which was to be in lieu not only of the plaintiff's right to support but all other claims to any interest in defendant's property or estate.").

■ Thus, regardless of terminology, Illinois case law appears to indicate that the parties to a divorce may enter into a property settlement agreement (separate and distinct from section 17 of the Illinois Divorce Act) pursuant to which property settlement one spouse agrees to make payments to the other in consideration for the latter's relinquishment of all interests and claims in the former's property. As noted above, said payments, unlike alimony payments, are not premised on the paying spouse's common law duty to support his former mate.

A very recent decision of the Illinois Appellate Court is illustrative. In *Pacione v. Reed,* 81 Ill.App.3d 600, 37 Ill.Dec. 426, 402 N.E.2d 316 (1980), the parties entered into a marital settlement agreement which was later incorporated into their divorce decree. Pursuant to said marital separation agreement, the husband agreed to pay his ex-wife, "as and for her allowance for support and maintenance," the sum of $150 per week for a period of 121 months. In the event the husband died before the expiration of the 121-month period, the unpaid installments were to be paid to the wife in a lump sum within 90 days of the husband's death. The agreement expressly stated that the payment obligations of the husband were undertaken "in discharge of a legal obligation which, because of the marital or family relationship, is imposed on or incurred by [the husband] under a written instrument incident to a divorce."

Approximately 21 months after the divorce decree was entered, the husband filed for bankruptcy. Characterizing the periodic payments as part of the parties' property settlement, he listed his wife as an unsecured creditor and was subsequently discharged in bankruptcy. The wife responded by filing a petition in the state court seeking to have the husband held in contempt of court for failing to maintain the scheduled payments. The husband moved to dismiss the petition on the ground that his payment obligations had been discharged in bankruptcy. Finding the language of the marital settlement agreement to be ambiguous, the state court denied the husband's motion to dismiss and ordered an evidentiary hearing on the question of the parties' intent. Based on the parol evidence during that hearing, the court concluded that the parties had treated the payments in question as both maintenance and property settlement. Since the parties had not evidenced any intent as to the dischargeability of the payments, the court ordered the payments to be resumed.

The husband then petitioned the court for modification of the parties' divorce decree based upon a substantial change in circumstances. After a hearing, the court denied the petition, holding that the payments constituted alimony in gross and were hence non-modifiable, regardless of any change in the husband's circumstances.

On appeal, the Illinois appellate court, noting that the lower court's interpretation and construction of the periodic payment provisions in question should not be set aside unless "manifestly erroneous," agreed with the lower court's conclusion that the language of the separation agreement, the parties' testimony at the evidentiary hearing, and the parties' treatment of the payments all evidenced a "hybrid intent," revealing characteristics of both an alimony agreement and a property settlement. After explaining the distinguishing characteristics of alimony in gross and periodic alimony under Illinois law (citing *Walters, supra*), the Court stated (at 319–20) (emphasis added):

Comparing the payments at bar with the above distinction, it can readily be seen that they have the characteristics of alimony in gross, rather than periodic alimony. *More difficult is the ultimate determination of whether the payments are alimony in gross or payments incident to a property settlement.* In discussing the characteristics of a settlement in lieu of alimony in *Jacobson v. Jacobson* (1964), 50 Ill.App.2d 244, 200 N.E.2d 379, 381, the court stated:

" * * * The problem is a factual one— whether the payments stem from the natural and legal duty of a husband to support his wife or from the legal and equitable interests the wife may have in property accumulated by the parties during their marriage . . . ."

In the case at bar, the trial court held that the parties treated the payments as both alimony and settlement and the juxtaposing of these elements is frequently encountered in agreements of this nature. [Citations omitted.] Alimony in gross has been characterized as "part of the lump sum property settlement" and "closely connected" with the distribution of real and personal property (*Koivun v. Koivun*) [45 Ill.App.3d 39, 3 Ill.Dec. 805, 359 N.E.2d 215 (1977)], and is often indistinguishable in character from a settlement of property between spouses.

It is this problem of definition, usually encountered in differentiating between periodic and gross alimony, that led to the unchallenged hearing on the issue of intent in the case at bar. * * *

\* \* \* \* \* \*

* * * Considering the agreement at bar and the intentions of the parties, we do not find the interpretation and construction of the marital settlement agreement and orders therefrom to be manifestly erroneous. [Emphasis added.][14]

**14.** The Court expressly noted that the result reached would be the same under both the Illinois Divorce Act, Ill.Rev.Stat.1975 ch. 40, ⌐ 1 *et seq.*, or the new Illinois Marriage and Dissolution of Marriage Act, Ill.Rev.Stat.1977 ch. 40, ⌐ 101 *et seq.*

In sum, the Illinois case law would appear to indicate that, just as there is a distinction between periodic alimony and alimony in gross, so is there a distinction between alimony in gross and a property settlement; and that the mere fact that the parties did not request an Illinois court to convey title to a particular piece of property pursuant to section 17 and the consequent inapplicability of section 17 does not necessarily suggest that the payments in question are in the nature of alimony, and not a property settlement. Accordingly, it would appear that if the payments called for under paragraph 8 of the MSA are in the nature of a property settlement, unrelated to the husband's common law duty to support his wife, those payments are not in the nature of alimony under federal or Illinois law and would be dischargeable in bankruptcy, notwithstanding the fact that the payments might be denominated "alimony in gross" under the terminology of Illinois law.

In this case, the inquiry required under federal law is the same as would be necessary if Illinois law were deemed to be controlling. That inquiry requires a determination of whether the payments under the MSA were intended by the parties to fulfill the husband's common law duty of support and maintenance or, rather, were intended to constitute a property settlement. In its prior two opinions, this Court, applying Illinois law, concluded that it was unable, based on the ambiguous language of the MSA and the existing parol evidence (*i. e.*, the transcript of the original Dec. 14, 1976 hearing), to discern the true intent of the parties. Regrettably, that ambiguity remains unresolved.

Bankruptcy Rule 407, which became effective on October 1, 1973, sets forth the applicable burden of proof standard:

At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the facts essential to his objection.

Thus, in the case at bar, plaintiff-wife has the burden of proving that the payment obligations assumed by defendant-husband under paragraph 8 of the MSA were intended to be in the nature of alimony and, hence, nondischargeable.

Prior to the enactment of Rule 407 in 1973, the rule governing burden of proof in objecting to a discharge was set forth in the following proviso in section 14(c) of the Bankruptcy Act, 11 U.S.C. § 32(c):

*Provided*, That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt.

That proviso was interpreted as requiring the objector to make merely a *prima facie* showing that the bankrupt was not entitled to a discharge under the Act. Once that *prima facie* showing was made, the ultimate burden of proof, not merely the burden of going forward with the evidence, shifted to the bankrupt.

The burden of proof standard was changed, however, by the promulgation of Rule 407 in 1973. The Advisory Committee Note to Rule 407 expressly states:

The rule supersedes the proviso at the end of § 14c of the Act * * *. The proviso has generally been equated with a requirement that the objector make a prima facie case under § 14c * * *. See, e. g., *In re Pioch*, 235 F.2d 903, 905 (3d Cir. 1956) ("the burden of proof is on the objecting creditor to prevent the bankrupt's discharge, otherwise stated, the objecting creditor must make out a prima facie case"). See also *Feldenstein v. Radio Distributing Co.*, 323 F.2d 892, 893 (6th Cir. 1963); *Johnson v. Bockman*, 282 F.2d 544, 545 (10th Cir. 1960); *Industrial Bank of Commerce v. Bissell*, 219 F.2d 624, 625–26 (2d Cir. 1955); *Dixwell v. Scott & Co., Ltd.*, 115 F.2d 873, 875 (1st Cir. 1940); 1 Collier 1314.1–1314.2 (1971).

Collier writes that "[t]his rule [*i. e.*, present Rule 407] places the burden of proving that a bankrupt is not to be granted a

discharge on the objectant, *i. e.*, the plaintiff." 12 Collier on Bankruptcy ¶ 407.1 at 4–67 (14th ed. 1978). Collier further comments (at ¶ 407.3, pp. 4–69 to 4–70):

Rule 407 apparently supersedes the proviso to Section 14c and restores the state of the law to that which was in effect prior to 1926 when the predecessor to the proviso to Section 14c first imposed on bankrupts the burden of ultimately persuading the trier of the facts by the weight of the evidence that the act charged had not been committed. [Footnote 6 omitted.]

Accordingly, this rule follows the general rule governing the burden of proof in civil litigation and must be read to mean that the plaintiff [7] must make out a prima facie case to withstand a motion by the bankrupt to dismiss and, on all the evidence in the case, sustain the charge against the bankrupt by the preponderant weight of the evidence as in most civil suits.

[7] Since objections to discharge are adversary proceedings under Rule 701(4), *infra*, to be commenced by filing a complaint under Rule 703 in a form authorized by Rule 7(a) of the Federal Rules of Civil Procedure, applicable to these rules by Rule 707, it follows that the objectant to the discharge is denominated "plaintiff" and the bankrupt "defendant" in the complaint. Rule 407 acknowledges this.

In *Matter of Martin*, 554 F.2d 55, 58 n.1 (2d Cir. 1977), Judge Lumbard noted:

The proviso at the end of § 14c placed the burden of proof on the bankrupt once the objector made a prima facie case. *See generally Industrial Bank of Commerce v. Bissell*, 219 F.2d 624, 625–26 (2d Cir. 1955). This proviso has been superseded by Bankruptcy Rule 407, under which the burden of persuasion remains always on the objector. See Advisory Committee Note. The new rules are applicable to bankruptcy proceedings pending as of October 1, 1973 except to the extent that application would be unfeasible or unfair. [Citation omitted.]

*See also Matter of Decker*, 595 F.2d 185, 187–90 (3d Cir. 1979).[15]

To the extent that Rule 407 was enacted to supersede the proviso in section 14(c) of the Act, it might be contended that the burden of proof provision of Rule 407 is applicable only to cases in which a creditor is objecting to a discharge under section 14 of the Bankruptcy Act, 11 U.S.C. § 32, and not to cases, like the within case, in which a creditor is objecting to the dischargeability of a particular debt pursuant to section 17 of the Act, 11 U.S.C. § 35. However, such a contention would not appear meritorious.

In *Nitz v. Nitz*, 568 F.2d 148 (10th Cir. 1977), a divorced husband petitioned for voluntary bankruptcy and sought to be excused from certain financial obligations which he had assumed under the provisions of his divorce decree. Thereafter, his ex-wife filed a complaint in the bankruptcy court, seeking a determination that the obligations in question were in the nature of support and alimony and, hence, nondischargeable under section 17(a)(7), 11 U.S.C. § 35(a)(7). The same procedures as were followed by the parties in *Nitz* have seemingly been followed by plaintiff-wife and defendant-husband in the case at bar. In *Nitz*, after trial, the bankruptcy judge concluded that the financial obligations, other than those specifically denominated alimony and child support in the divorce decree, constituted a property settlement between the parties and were, therefore, dischargeable in bankruptcy.

The wife appealed that adverse determination to the District Court. That Court reversed the Bankruptcy Judge, holding that the payment obligations were for sup-

**15.** While Rule 407 imposes both the initial burden of producing evidence and the ultimate burden of persuasion on the objector, the rule leaves to the Court the determination as to the shifting of the burden of going forward with the evidence. The Advisory Committee Note to Rule 407 provides in relevant part:

This rule does not deal with the burden of going forward with the evidence. Subject to the allocation by the rule of the initial burden of producing evidence and the ultimate burden of persuasion, the rule leaves to the courts the formulation of rules governing the shift of the burden of going forward with the evidence in the light of such considerations as the difficulties of proving the nonexistence of a fact and of establishing a fact as to which the evidence is likely to be more accessible to the bankrupt than to the objector. [Citations omitted.]

port, alimony and maintenance of the minor children and, hence, nondischargeable. On appeal, the Tenth Circuit reversed the judgment of the District Court and remanded the case for reinstatement of the order of the Bankruptcy Judge. In so holding, Judge Holloway wrote as follows (at 152):

The wife as the party objecting to the discharge "has the burden of proving the facts essential to [her] objection." Rule 407, Federal Bankruptcy Rules. The bankruptcy judge was not persuaded by the proof and found that with the exception of the express provisions for alimony and child support, "all remaining obligations imposed on Darrell Nitz, and in favor of Peni Nitz, by terms of the divorce decree, constitute a property settlement between the parties." Obligations which are not in the nature of alimony but are part of a property settlement are dischargeable. See *Caldwell v. Armstrong*, 342 F.2d 485, 488 n.5 (10th Cir.).[16]

In *In re Smith*, 436 F.Supp. 469 (N.D.Ga. 1977), the bankrupt, a divorced husband, appealed from an order of the Bankruptcy Judge holding that certain payment obligations arising out of the husband's divorce decree were obligations for the support and maintenance of the bankrupt's former wife and, hence, nondischargeable under section 17(a)(7), 11 U.S.C. § 35(a)(7). On appeal, the District Court affirmed. In so holding, that court indicated that the burden of proof provision of Rule 407 was applicable to a proceeding under section 17 of the Act. However, that court also seemingly interpreted Rule 407 as requiring the party objecting to discharge of the debt to make merely a *prima facie* showing that the bankrupt's payment obligations were in the

nature of alimony. Judge Freeman suggested (at 477–78) that once that *prima facie* showing was made, the ultimate burden of proof shifted to the bankrupt to show that he was entitled to discharge:

Mrs. Smith had the burden of proving that the obligations in paragraphs 2(a), (b) and (g) were in the nature of payments for alimony, support, and maintenance and were, therefore, not dischargeable in bankruptcy. Bankruptcy Rule 407. *In the Matter of Trigg, supra.* Appellee satisfied her burden of making a *prima facie* showing that although the payments in paragraph 2(b) were couched in the language of "installment payments of a lump sum property settlement" for federal income tax purposes, that the payments were, nevertheless, for alimony, support, or maintenance. * * *

After Mrs. Smith made her *prima facie* showing that the payments in paragraphs 2(a), (b), and (g) were rooted in the legal obligation of Mr. Smith to provide continued support and maintenance, it was thereafter incumbent upon the bankrupt to prove that he was entitled to discharge. *In the Matter of Trigg, supra ; In re KDI Corp.,* 477 F.2d 742, 747 (6th Cir. 1973); *Feldenstein v. Radio Distributing Co.,* 323 F.2d 892, 893 (6th Cir. 1963).

With deference, this Court disagrees with the application of Rule 407 in *Smith*.[17] As indicated *supra*, the Advisory Committee Note to Rule 407 specifically states that the rule was intended to supersede the earlier interpretation of the proviso at the end of section 14(c), *i. e.*, the former interpretation of the statute which required the objector to make merely a *prima facie* showing that

16. *See also Matter of Amador*, 596 F.2d 428, 433 (10th Cir. 1979) (seemingly applying Rule 407 to a case in which the creditor objected to the dischargeability of the bankrupts' debts pursuant to section 17(a)(2) of the Act, 11 U.S.C. § 35(a)(2), but seemingly dealing with burden of going forward rather than burden of proof).

17. In *Gardner v. American Century Mortg. Inv.*, 577 F.2d 928, 929 (5th Cir. 1978) (per curiam), a case arising under section 14 of the Act, the Court held that "once a creditor has made a prima facie case for denying discharge the bur-

den of proving that he has not committed acts justifying the denial of a discharge shifts to the bankrupt." In so holding, the Court did not refer to present Rule 407. This Court does not know whether the bankruptcy proceedings in *Gardner* arose prior to or after the effective date of Rule 407. In any event, this Court, in the absence of any contrary expression of view by the Supreme Court or the Fourth Circuit will follow the Advisory Committee's clear statement as to the meaning of present Rule 407.

the bankrupt was not entitled to discharge, with the burden of proof then shifting to the bankrupt. Under present Rule 407, by contrast, the ultimate burden of persuasion, *not merely the initial burden of producing evidence*, remains on the objector. It is to be noted that two of the cases cited by the District Court in *Smith*, namely, *In re KDI Corp.*, 477 F.2d 742 (6th Cir. 1973), and *Feldenstein v. Radio Distributing Co.*, 323 F.2d 892 (6th Cir. 1963), were decided prior to the enactment of Rule 407. Indeed, the *Feldenstein* decision was cited in the Advisory Committee's Note to Rule 407 as one of the cases setting forth the interpretation of the section 14(c) proviso which was superseded by the promulgation of Rule 407.

Accordingly, this Court interprets Rule 407 as imposing upon the plaintiff-wife the burden of proving by a preponderance of the evidence that the obligations in paragraph 8 of the MSA were in the nature of alimony payments and were, therefore, nondischargeable in bankruptcy. In this Court's view, plaintiff-wife has not met that burden. During a hearing on the husband's latest appeal held on the record in open Court, counsel for the plaintiff-wife informed this Court that, while his client recognized that she bore the burden of proof in this case, she did not desire to present any further evidence to the Bankruptcy Judge. Thus, the record in this case is essentially the same as it was when this Court first remanded the case almost 2½ years ago. Accordingly, this Court still concludes that the provisions of the MSA are ambiguous and that, based on the existing parol evidence in the record (*i. e.*, the transcript of the December 14, 1976 hearing), it is not possible to discern whether the pay-

ment obligations under paragraph 8 were intended by the parties to be in the nature of alimony or, rather, were intended to constitute a property settlement.

For the reasons stated in this Court's two prior opinions in this case and for the further reasons set forth in the within opinion, this Court further concludes that, on the basis of the existing record, the plaintiff-wife has failed to meet her burden of proving by a preponderance of the evidence that the husband's obligations under paragraph 8 were intended as settlement in lieu of alimony and are, hence, nondischargeable in bankruptcy.[18] In view of plaintiff's declination of the opportunity to present any further evidence to the Bankruptcy Judge or any further legal memorandum to the Bankruptcy Judge or to this Court, and her decision instead to rest upon the existing record, there would rather obviously be no purpose in this Court's again remanding this case to the Bankruptcy Judge for a third time. Accordingly, the Order of the Bankruptcy Judge filed on December 21, 1979 will be reversed[19] and defendant's payment obligations under Paragraph 8 of the MSA will be discharged pursuant to section 17(a) of the Bankruptcy Act, 11 U.S.C. § 35(a).

### APPENDIX 1

### AMENDED STATEMENT OF FACTS AND CONCLUSIONS OF LAW ON COMPLAINT OF BETTY JANE OST TO DETERMINE DISCHARGEABILITY OF A DEBT

### STATEMENT OF FACTS

This case was remanded on appeal with instructions that this Court set forth in

---

**18.** It is to be noted that the defendant-husband entered into the agreement in question with full knowledge that his wife intended to remarry as soon as their divorce was finalized and that, upon her remarriage, his common law duty of support would be extinguished.

**19.** In so holding, this Court is fully aware that, pursuant to Bankruptcy Rule 810, this Court must accept the Bankruptcy Judge's findings of fact unless they are "clearly erroneous" and should "give due regard to the opportunity of the referee to judge the credibility of the witnesses." In *United States v. United States*

*Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948), Mr. Justice Reed stated: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." In this case, giving all due regard to the record herein including each and every one of the Bankruptcy Judge's findings and conclusions, this Court believes that plaintiff-wife has not met her burden of proof and that the contrary conclusion is "clearly erroneous."

more detail the facts upon which it reached its conclusions. In addition to the facts outlined in the first Statement of Facts, the Court also considered the testimony of the husband who testified that the $66,550.00 he agreed to pay his wife was arrived at by him as the figure he could pay and still have an amount sufficient on which to live and it was also an amount which was sufficient to satisfy the Internal Revenue Service that it was alimony. He further testified that both he and his wife, prior to their divorce, lived with the persons whom they later married and that he intended that the money he was to pay his wife was to be used to maintain her in the same economic position to which she was accustomed while they were married.

The wife testified that her husband had told her that he and her attorney had budgeted her expenses and arrived at the payments she would require to live on after their divorce. She also testified that he told her he would not pay more than $600.00 per month since she was earning $550.00 per month. The Agreement stated, and the wife testified, she was to be deeded the house and was to make the mortgage payments, and her husband was to maintain life insurance to insure against any default in his monthly payments to her.

## CONCLUSIONS OF LAW

In *Remondino v. Remondino*, 41 Cal. App.2d 208, 106 P.2d 437 (1940), the Court stated that "if, upon a consideration of the entire transaction the Court determines that the purpose of the judgment for support money is to guarantee the economic safety of the wife by the husband, then his discharge in bankruptcy does not affect his liability under the judgment". From the testimony of the husband during cross-examination that the money payable to his wife was to maintain the "same economic position as previously", and was an amount sufficient to satisfy the Internal Revenue that it was alimony, this Court concludes that this case falls within the *Remondino v. Remondino* decision and finds that the amount payable to the wife by the husband is in the nature of alimony and is nondischargeable.

Dated  February 16, 1978

    Glenn J. Goldburn
    United States Bankruptcy Judge

## APPENDIX 2

### OPINION ON 2ND APPEAL

FRANK A. KAUFMAN, District Judge.

This case is before this Court on appeal for the second time. In *Melichar v. Ost*, 445 F.Supp. 1162 (D.Md.1977) this Court, on December 16, 1977, remanded the within case to the Bankruptcy Judge for further proceedings in accordance with this Court's opinion. Thereafter the Bankruptcy Judge filed, on February 16, 1978, the attached "Amended Statement of Facts and Conclusions of Law . . . ." Regretfully, this Court concludes that a further remand is required.

The background concerning the alimony exception in bankruptcy is discussed in some detail in this Court's December 16, 1977 opinion and will not be repeated herein. The determination of whether the settlement agreement here in issue is dischargeable in bankruptcy depends upon the answers to two questions: (1) Does a husband have, under the law of Illinois, a common law duty to support his former wife? (2) If the answer to question (1) is "Yes", was the settlement agreement in this case in fact entered into in discharge of that common law duty?

The existence, *vel non*, of a common law duty to support in Illinois presents a question of law. Judge Goldburn's two opinions strongly suggest that he has concluded that such a duty does exist. This Court agrees. In *Walters v. Walters*, 341 Ill.App. 561, 94 N.E.2d 726, 729 (1950), *aff'd*, 409 Ill. 298, 99 N.E.2d 342 (1951), the Court stated:

"Payments of alimony from husband to wife are not based upon any consideration moving from wife to husband, but are based upon the common law duty of the husband to support his wife."

*See also, Balasa v. Balasa*, 11 Ill.App.2d 103, 136 N.E.2d 594, 595 (1956); *Kohler v. Koh-*

*ler,* 31 Ill.App.2d 151, 175 N.E.2d 603, 604 (1961); *Chamberlin v. Chamberlin,* 119 Ill. App.2d 295, 256 N.E.2d 159, 161 (1970).

The question of whether the settlement agreement in this case was intended by the parties to discharge the husband's common law duty to his wife is a factual one for determination by the Bankruptcy Judge. Judge Goldburn initially observed that "[t]estimony of the parties indicates that the amount payable to the wife was to maintain her economic position and the Court concludes that it is in the nature of alimony and is nondischargeable ...." In its December 16, 1977 opinion, 445 F.Supp. at 1167-68, this Court, quoted extensively from *Richheimer v. Richheimer,* 9 Ill.App.3d 376, 292 N.E.2d 190, 193-94 (1972), and wrote (at 1169) that "the *Melichar* agreement is ambiguous, containing provisions of a property settlement (continuation of payments after remarriage; notation of a "fixed sum") as well as provisions suggestive of an alimony arrangement (termination of payments upon death of husband; premature termination possibility after 108 months)." In a case in which the settlement agreement is ambiguous, Illinois law permits and perhaps suggests the advisability of reference to parol evidence. *Richheimer v. Richheimer,* 292 N.E.2d *supra* at 193-94. Because the Bankruptcy Judge is in the best position to determine the intent of the parties, this Court remanded the within case to him for further consideration with reference to Illinois law. Upon remand Judge Goldburn supplemented his earlier opinion and concluded that "the amount payable to the wife by the husband is in the nature of alimony and is nondischargeable," citing a California case upon which he relied in his first opinion. As of this date it is not clear whether the Bankruptcy Judge considered and determined both the meaning of Illinois case law and applied the same to the facts in this case. Further, the Bankruptcy Judge's findings of fact in his two opinions are only general in nature. Accordingly, the within case is hereby again remanded to the Bankruptcy Judge. Upon remand the Bankruptcy Judge may conduct such a further evidentiary or nonevidentiary hearing, if any, as he shall determine. However, in any event, the Bankruptcy Judge is asked to set forth in detail in a further opinion specific reasons, in light of Illinois law, why he concludes that the settlement agreement was or was not intended by the parties to be in discharge of the husband's common law duty to his wife and therefore nondischargeable or dischargeable. In so doing, the Bankruptcy Judge is asked to make specific findings of facts and conclusions of law, taking into account all of the terms and provisions of the Settlement Agreement including, *inter alia,* (1) the notation of a "fixed sum", (2) the continuation of payments after remarriage, (3) the termination of payments upon the husband's death, (4) the termination possibility after 108 months, (5) the wife's adultery and her recrimination defense to divorce, (6) the factors which the parties maintain went into the calculations of the amounts provided for in the agreement, and (7) the provisions for waiver of alimony.

## APPENDIX 3

### ADDITIONAL STATEMENT OF FACTS AND CONCLUSIONS OF LAW ON COMPLAINT OF BETTY JANE OST TO DETERMINE DISCHARGEABILITY OF A DEBT

#### STATEMENT OF FACTS

This case was remanded, after appeal, for further determination in light of Illinois law of whether a settlement agreement was intended by the parties to be a discharge of the husband's common law duty to support his wife and thus a nondischargeable debt in bankruptcy. The Court was asked to make specific findings and conclusions concerning the settlement agreement including (1) the notation of a "fixed sum", (2) the continuation of payments after remarriage, (3) the termination of payments upon the husband's death, (4) the termination possibility after 108 months, (5) the wife's adultery and her recrimination defense to divorce, (6) the factors the parties maintain went into the calculations of the amounts

provided for in the agreement, and (7) the provisions for waiver of alimony.

## CONCLUSIONS OF LAW

Two provisions of Illinois law describe three distinct awards that may be ordered by the Court when parties are divorced. Section 17 of the Divorce Act (Ill.Rev.Stat. Ch. 40, par. 18) provides for property settlements when either party holds title to property equitably belonging to the other. Section 18 (Ill.Rev.Stat. Ch. 40, par. 19) permits either periodic alimony, or a settlement in lieu of alimony, payable in gross or in installments. A settlement in lieu of alimony under Section 18 of the Act is distinct from a division of the property rights of the parties under Section 17, which can be ordered only if specifically alleged in a complaint and established by competent evidence at trial. *Palacio v. Palacio*, 33 Ill. App.3d 1074, 339 N.E.2d 427 (1975).

Alimony in gross, also known as a settlement in lieu of alimony, is "an arrangement for support and maintenance in which the entire award is vested, not subject to modification and definite in amount, regardless if the award consists of the payment of money or the transfer of specific real or personal property, or both." *Id.* 339 N.E.2d at 430.

Alimony in gross is distinguished from periodic alimony in that the latter is extinguished by the remarriage of the spouse receiving payments and the former is not affected by remarriage. Further, periodic alimony is usually extinguished by the death of the paying party (although the parties may agree otherwise), while alimony in gross is always a charge upon the paying party's estate. The basic effect of electing alimony in gross is that it is not modifiable by the Illinois courts; periodic alimony payments may be modified or terminated by the courts given the requisite showing. *Walters v. Walters*, 341 Ill.App. 561, 94 N.E.2d 726, *aff'd*, 409 Ill. 298, 99 N.E.2d 342 (1950).

The law of Illinois regarding alimony awards is that the method of payment, as well as the terms and labels used by the parties and those used in the decree, are not conclusive in determining whether an award is a property settlement, periodic alimony or alimony in gross. *Jacobson v. Jacobson*, 50 Ill.App.2d 244, 200 N.E.2d 379 (1964). However as pointed out, *supra*, questions of property settlement must be specially pleaded as required by Section 17 of the Illinois Divorce Act. In this case, such a settlement was not pleaded, as the parties elected alimony in gross in their settlement agreement.

Most of the factors which entered into the settlement agreement (and which were to be specifically addressed on remand) point to the conclusion that alimony in gross or settlement in lieu of alimony was intended by the parties. These include the facts that the payments were of a definite amount, (a lump sum payable in installments), the factors which the parties contended entered into the calculations of the amount, and the provisions waiving alimony in the future, since under Illinois law, a party cannot receive both periodic alimony and alimony in gross. Most importantly, the payments were to continue even after the wife's remarriage, a situation which is prohibited by the Illinois Divorce Act § 18 in the case of periodic alimony. The fact that the agreement provided that the payments were restricted to 108 if the wife remarried and 121 if she did not seems irrelevant. The important *factor* is that the husband voluntarily agreed to continue paying installments even after the wife's remarriage. The issue of adultery also appears to be irrelevant since the husband entered into the agreement with full knowledge of his wife's adulterous relationship. The only factor which is adverse to the definition of the payments as alimony in gross is the provision that the payments will terminate upon the husband's death. This is also prohibited by § 18 of the Act.

The Court need not reach a conclusion on this issue, however, since whether the award is titled periodic or in gross, the fact remains that it is alimony and not a property settlement. A settlement in lieu of alimony or alimony in gross is defined by the

Illinois courts as an award for the support and maintenance of the spouse receiving it. *Palacio, supra; See also,* citations therein. The Court finds that the agreement here contemplated support and maintenance of the wife in line with the definition in Illinois law. The bankrupt testified that the money payable to the wife was to be used by her to maintain the same economic position as she had maintained during their marriage. The wife testified that her husband told her that he and her attorney had budgeted her expenses and arrived at payments she would require to live on after the divorce.

Although the payments do not continue after the husband's death, the sum total of the other factors add up to alimony in gross, intended by the parties as support and maintenance of the wife, in discharge of the husband's common law duty, rather than as a property settlement.

Notwithstanding the above findings with respect to the law of Illinois as directed by the appellate tribunal on remand, the Court feels it should reiterate its original findings and conclusions in this case. The Court previously found that it should consider the entire transaction between the parties and that if it determines the purpose of the payments is for the support of the wife, the debt is not dischargeable. *See Remondino v. Remondino,* 41 Cal.App.2d 208, 106 P.2d 437 (1940). *See also, Kadel v. Kadel,* 250 N.E.2d 420 which held that a lump sum payment for maintenance and support was considered in the nature of alimony and not dischargeable. In *Shacter v. Shacter,* Case 77–01068 G, this Court decided on April 5, 1978 that it is not bound by a State Court's definition of alimony but is bound to determine, from the facts, the intention of the parties. On appeal to the United States District Court for the District of Maryland, that finding was upheld, and District Judge C. Stanley Blair rejected appellant's contention that the debt was in the nature of a property settlement since the payments required by the separation agreement did not meet the requirements of technical alimony under Maryland law. Civil No. B–78–1485 decided March 16, 1979. On appeal to the

Court of Appeals for the Fourth Circuit, the findings of this Court and the District Court were affirmed, and the Court of Appeals stated, "As the opinion of the District Judge clearly established (a) the definition of alimony under State law is not controlling on the federal question of what constitutes "alimony" or "maintenance and support" for the purposes of the Bankruptcy Act, and (b) the obligations of appellant do constitute "alimony" or "maintenance and support" within the meaning of the bankruptcy statute. No. 79–1266 decided November 20, 1979.

In view of the above findings, the Court concludes the debt is nondischargeable under § 17(a)(7).

Dated  December 21, 1979

GLENN J. GOLDBURN
Judge, United States Bankruptcy Court for the District of Maryland

## APPENDIX 4

June 10, 1980

MEMORANDUM TO COUNSEL RE OST V. MELICHAR—CIVIL NO. K–78–498 (IN RE THEODORE F. MELICHAR, BANKRUPT, BANKRUPTCY NO. 76–00921G)

I have a draft opinion prepared in this case which I was just about to finalize and issue. Quite frankly, at this time, I tentatively am of the opinion that I will probably not find myself in agreement with Judge Goldburn. This would not appear to be a case, as Judge Goldburn has indicated which falls within the meaning of section 17 of the Illinois divorce law but, in my tentative view, that is so because neither of the parties has ever requested the Court to transfer a particular piece of property to him or her from the other. Rather, as was true in the *Richheimer* case, the parties reached a mutual agreement and asked for it to be incorporated into the divorce decree in the divorce suit instituted by one of the parties against the other. In *Richheimer,* the remand was seemingly to determine whether or not the agreement was an ali-

mony agreement or a property settlement. However, the type of property settlement seemingly under consideration in *Richheimer* would not appear to be a property settlement pursuant to section 17. Accordingly, it would appear that in Illinois, at least at the time of the *Richheimer* case, it was possible for there to be a section 17 property settlement, a section 18 alimony decree, either periodic or in gross, or a property settlement which was neither alimony nor a section 17 property settlement.

Quite frankly, however, I am not comfortable at this time issuing a final opinion in this case, even though I have engaged in a considerable amount of work in connection with the preparation of a final opinion, without having counsel thoroughly research the applicable Illinois law at the relevant and material time or times with relationship to this case. If that requires you gentlemen to consult Illinois attorneys, and to have their aid in submitting further memoranda to this Court, then I believe that such consultation may be necessary.

The draft of the opinion which I was about to file and which I would have filed if I had been confident enough about my understanding of Illinois law would reverse Judge Goldburn and enter judgment in favor of the husband on the basis that, as I have stated in the two prior opinions I have filed, the language of the agreement in this case and the existing parol evidence which can be discerned from the transcript of the December 14, 1976 hearing present an ambiguity. Despite the two previous remands, neither party has sought to present any further evidence before the Bankruptcy Judge. Further, during the last hearing in this case, both of you stated that you did not desire to present any further evidence. Counsel for the wife so stated after I had specifically pointed out that the burden of proof is on the party objecting to a discharge.

In that latter connection, I call your attention to Bankruptcy Rule 407 which became effective on October 1, 1973. Prior to the enactment of Rule 407 in 1973, the burden of proof which had to be borne by a party objecting to a discharge was set forth in 11 U.S.C. § 32(c). The proviso in the statute was interpreted as requiring the objector to make only a *prima facie* showing that the bankrupt was not entitled to a discharge. Once that *prima facie* showing was made, the ultimate burden of proof, not merely the burden of going forward with the evidence, shifted to the bankrupt. *See* 12 Collier on Bankruptcy ¶ 407.2[1] (14th ed. 1978). Under Rule 407, however, as is made clear by the Advisory Committee Note thereto, as well as by the discussion in 12 Collier ¶ 407.3 (14th ed. 1978), the objector not only has the initial burden of going forward to produce evidence but has the ultimate burden of proof by a preponderance of the evidence. Accordingly, the wife in this case would seem to have the burden of proof by a preponderance of the evidence that the obligations in paragraph 8 of the agreement under consideration herein were in the nature of alimony payments and are therefore not dischargeable. Accordingly also, if there is an ambiguity, then that ambiguity must be resolved against the wife.

Unless there is something in Illinois law which leads me to a contrary conclusion, I expect to file an opinion along the lines indicated hereinabove in this memorandum. However, I am not ready so to do without understanding Illinois law and I must call upon you gentlemen thoroughly to analyze and to brief Illinois law. I cannot undertake that on my own with my law clerk in view of the calendar of this Court.

The *Shacter* case cited by Judge Goldburn does instruct the Bankruptcy Court to look to the substance of the obligation and not to labels imposed by state law. But that of course does not mean that the applicable state law does not control in terms of determining whether payments under an agreement of the type involved herein by one of the parties to the other constitute alimony payments which are not dischargeable or property settlement payments which are dischargeable.

I ask that counsel simultaneously file the kind of briefs I have requested on or before

July 1, 1980, with any rebuttals to be filed no later than July 11, 1980. If either of you desires a further hearing, please so advise the Court on or before June 20, 1980. If I do not hear from you on or before June 20, 1980, I will know that neither of you desires a hearing. From my own point of view, I would not set this case down for a hearing without a request from one of you and will be prepared promptly to file an opinion in this case once I get the help with Illinois law which I require.

Very truly yours,
/S/ Frank A. Kaufman

### APPENDIX 5

July 31, 1980

Honorable Frank A. Kaufman
United States District Judge
United States District Court
  for the District of Maryland
Baltimore, Maryland 21202
  RE: Ost vs. Melichar
  Civil No. K–78–498
  (In Re: Theodore F. Melichar, Bankrupt
  Bankruptcy No. 76–00921G)

Dear Judge Kaufman:

This is in response to your Memorandum dated June 10, 1980. In each of the Memorandums which I have submitted to you I have cited what I believe to be the applicable Illinois law. Pursuant to your request, I have once again researched the Illinois law to determine if there have been any developments which occurred subsequent to the filing of my last Memorandum. The only major development which I have discovered is that the Illinois statute which existed at the time of the execution of the parties' separation agreement has been repealed and a new statute enacted. The new statute to take effect October 1, 1977, is known as the "Illinois Marriage and Dissolution of Marriage Act", and substantially changes the previous statute. This new statute, of course, does not affect the parties in this action. I cannot provide you with any other Illinois law, other than which I have

previously cited in my several Memorandums.

Thank you for your courtesies.

Very truly yours,
/S/ Bert W. Kapinus

### APPENDIX 6

Rockville, Maryland
July 31, 1980

The Honorable Frank A. Kaufman
United States District Judge
United States District Court
  for the District of Maryland
Baltimore, Maryland 21202
  Re: Ost v. Melichar
  Civil No. K–78–498

Dear Judge Kaufman:

Counsel for the parties have again fully considered this case, including previously filed briefs, Orders and Memorandum of the Court, in light of your Memorandum of June 10, 1980 and are constrained to rely on that previously submitted on behalf of their respective clients.

No further hearing in Open Court is requested on behalf of either counsel.

Very truly yours,
/S/ Charles C. Bowie

### APPENDIX 7

September 3, 1980

MEMORANDUM TO HONORABLE GLENN J. GOLDBURN, UNITED STATES BANKRUPTCY JUDGE, RE OST V. MELICHAR—CIVIL NO. K–78–498 (IN RE THEODORE F. MELICHAR, BANKRUPT, BANKRUPTCY NO. 76–00921G)

I am in the process of finalizing an opinion in this case. In reviewing the record herein, it appears that, upon this Court's second remand, neither party requested a further evidentiary or nonevidentiary hearing in the Bankruptcy Court nor submitted any additional legal memoranda to you. I would appreciate it if you would advise me,

as soon as possible, whether that is in fact the case.

Very truly yours,
/S/ Frank A. Kaufman

APPENDIX 8

September 8, 1980
The Honorable Frank A. Kaufman
United States District Judge
United States District Court
    for the District of Maryland
Baltimore, Maryland 21202
        Re:  Ost v. Melichar
        Civil No. K–78–498
        Bankruptcy No. 76–00921 G

Dear Judge Kaufman:

In response to your memo of September 3, 1980, the file reveals that argument of counsel was heard in open Court on June 26, 1979 and that counsel submitted proposed findings of fact and conclusions of law. Apparently these were not forwarded because they were not designated as part of the record on appeal.

Very truly yours,
/S/ Glenn J. Goldburn
Judge